## UNITED STATES v. ALLEN.

No. 30, Docket 20283.

Circuit Court of Appeals, Second Circuit.

Oct. 31, 1946.

On Reargument Jan. 10, 1947.

Writ of Certiorari Denied March 17, 1947.

See 67 S.Ct. 979.

L. HAND, Circuit Judge, dissenting.

———◇———

John F. X. McGohey, of New York City (Thomas F. Murphy, Thomas F. Burchill, Jr., and Bruno Schachner, all of New York City, of counsel), for plaintiff-appellee.

Goldstein & Goldstein, of New York City (David Goldstein and Lawrence Kovalsky,

both of New York City, of counsel), for defendant-appellant.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Without doubt, there was sufficient evidence (1) that defendant knowingly had possession of the package and (2) that the package contained the stamps. But more was essential: The defendant could not be convicted absent evidence that he knew the contents of the package. In that respect the evidence was insufficient.

True, Epstein testified that he asked Allen "where he got these stamps," and that Allen "said they were left there by a friend." True, too, Dalton testified that, after the package was opened, "Epstein showed [Allen] the stamps" and that Allen then said "he got those stamps" from Frank. But neither Epstein nor Dalton purported to be reporting Allen's statements verbatim nor in their entirety. And, in the light of (1) Epstein's testimony that Allen "never claimed to know what was in that package" and (2) Dalton's testimony that Allen did not "say anything which would indicate that he knew what was in the package before Epstein opened it," we think their testimony concerning Allen's statement cannot reasonably be taken to mean more than that the package, with contents unknown to him, had been given to him by Frank.

It is suggested that, had defendant been unaware that the package contained stamps, he would surely have shown surprise when Epstein opened it. But the government did not ask these witnesses to—and, to repeat, they did not—testify as to all the defendant said and did at the time. For all we know, he may have manifested such surprise. Absent any evidence on the subject, there was nothing from which the jury could reasonably infer that he did not. The burden was on the government to offer evidence of that fact, not on the defendant to disprove it.

As, then, there was no evidence that Allen knew that he had stamps in his posses-

sion, the judge should have granted Allen's motion to set aside the verdict.

Reversed.

SWAN, Circuit Judge (dissenting).

I think the judgment should be affirmed. The judge charged that "If the jury is uncertain as to whether the defendant knowingly had in his possession the ration stamps in question, their verdict must be not guilty." Their verdict shows that they resolved that issue against him. And rightly so, for the jury could properly infer from the testimony that Allen knew the contents of the package in his brief case before it was unwrapped by Detective Epstein. If he had then first learned that the package contained thousands of ration stamps, it is incredible that when asked "where he got these stamps" he would have replied merely that "they were left there by a friend." If ignorant of what the packages contained he would naturally have denied his knowledge of their contents or at least have said something to indicate that the disclosure of the stamps caused him surprise. Nothing of the sort appears from his conversation as reported by the detectives. Although Epstein testified that Allen "never claimed to know what was in that package," his failure to disclaim such knowledge is enough, in my opinion, to justify the inference that he did know.

On Reargument.

FRANK, Circuit Judge.

On our own motion we directed reargument, as a result of which a majority of the court has concluded that our original decision was wrong for the following reasons:

 Had the defendant remained silent when questioned by the detectives, there would have been nothing for the jury on the issue of his knowledge of the contents of the package. But the detectives testified that defendant gave an explanation of a kind which the jury may reasonably have believed to be so fishy as to show, by the mere telling of it, a guilty knowledge of what was inside the paper parcel found in defendant's brief-case. We think it clear that if defendant had testified to

that explanation the verdict would have stood. Andrews v. United States, 5 Cir., 157 F.2d 723, 724.[1] We consider it a distinction without a difference that the jury learned of this tale through the testimony of the detectives, since it was within the jury's province to believe them.

Of course, we disregard the defendant's failure to take the stand; we may, indeed, as Judge Hand suggests,[1a] consider the case as if the ancient rule still prevailed under which he would have been denied the right to do so. Thus considered, we have here a case of a verdict which, as to a crucial element of the crime, rests on indirect evidence of the sort called "circumstantial." To sustain verdicts thus grounded may, we recognize, lead at times to the conviction of innocent persons.[2] Defendant's story may have been true; for it is not inconceivable that a man might accept custody of a package, contents unknown from a casual acquaintance. But the undoubtedly grave problem of providing adequate safeguards against convictions of the innocent must be solved in some way other than that of refusing to allow reasonable inferences to be made.[3]

We see nothing improper in the judge's charge.

Affirmed.

L. HAND, Circuit Judge (dissenting).

I have little doubt in fact that Allen knew that the contents of his brief case was ration stamps; but my chief reasons for thinking so are that the police were after him—though on another matter—and that he did not take the stand. These two circumstances are cogent evidences of guilt, but we should not rely upon either; we must decide the case as though someone, who was not engaged in searching for evidences of crime, had turned up the ration stamps in Allen's brief case by accident, or while looking for something lost; and as though the law still forbad an accused to testify in his own behalf, as it used to do. After we have stripped away these telling details, we have left nothing except that the stamps were found secreted, and that Allen said that a man named "Frank" asked leave of him to secrete them with him. I quite agree that this was basis enough for an inference that Allen knew that what "Frank" wished to conceal was contraband of some sort; but that is not enough, unless it was sufficient basis for further inference that he knew that the contraband was ration stamps. I do not think that it will serve for this second inference. If Allen's explanation was so absurd on its face as to be an obvious fabrication, then it would be enough, for it is always permissible to infer guilt from the concoction of an evasion. But the story does not appear to me to be a sham on its face; I do not think it preposterous to suppose that a man might consent, without inquiry as to just what the contraband was, to let an acquaintance use his closet and his brief case to hide it away. Innocent people often to that extent indulge those who are not their intimates, and who are scarcely more than acquaintances: it is enough that in so doing they may help another in a hard spot; to inquire about just what that spot is is "to consider too curiously." As for not knowing "Frank's" surname, half the population of the United States at least under the age of forty appear to know each other only by their given name. United States v. Picarelli* need not trouble us. Ward, the accused, there took

[1] See also, e.g., Wilson v. United States, 162 U.S. 613, 621, 16 S.Ct. 895, 40 L.Ed. 1090; Wigmore, Evidence, 3rd Ed., §§ 173, 273, 278.

[1a] See infra.

[2] See Borchard, Convicting the Innocent (1933).

[3] The writer of this opinion has often expressed his concern with that problem and has suggested some safeguards. See e.g. dissenting opinions in the following cases: United States v. Antonelli Fireworks, 2 Cir., 155 F.2d 631, 642; United States v. Ebeling, 2 Cir., 146 F.2d 254, 257, 258; United States v. St. Pierre, 2 Cir., 132 F.2d 837, 840 at page 849 note 40, last paragraph, 147 A.L.R. 240.

The defendant who fears that a jury may be untrained in drawing inferences can waive trial by jury. Under the new Rules of Criminal Procedure, 18 U.S.C. A. following section 687, he can then procure special findings of fact from the judge.

* 2 Cir., 148 F.2d 997.

the stand, and the jury could judge the truth of his story by more than its words. Not so here, where they had nothing to go by but its inherent plausibility.