**UNITED STATES of America,
Appellee,**

v.

**Donald L. WILKINS, Appellant.**

**No. 10844.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 9, 1967.

Decided Oct. 31, 1967.

Edward P. Morgan, Washington, D. C. (Edward S. O'Neill, Marvin S. Romanoff, and Welch & Morgan, Washington, D. C., on brief), for appellant.

John D. Schmidtlein, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., Roger T. Williams, Asst. U. S. Atty., and Burton Berkley, Atty., Dept. of Justice, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge:

Defendant, Donald L. Wilkins, was convicted by a jury on all four counts of an indictment returned on December 8, 1965, charging him with willfully attempting to evade the payment of income taxes for the years 1960, 1961, 1962, and 1963, in violation of 26 U.S.C. § 7201. Motions for judgment of acquittal notwithstanding the verdict and, in the alternative, for a new trial, were denied. On appeal the defendant urges, as ground for reversal that, as to Count One, involving the year 1960, the court improperly determined that income received in years prior to 1960 could be attributed to 1960; that, as to the other three counts, the evidence was insufficient to sustain convictions; and that certain instructions to the jury, to which no objections were interposed, constituted plain error which should be noticed by this court under Rule 52(b), Fed.R.Crim. P.

We consider first the conviction on Count One apart from the other counts.

COUNT ONE (YEAR 1960)

The Government contended at trial that Wilkins understated his income for the year 1960 in the amount of $28,627.74, the greater portion of which was derived

from the sale of real estate. On February 26, 1958, Mr. and Mrs. Wilkins entered into an agreement with Phoenix Construction Company (hereafter Phoenix) to sell to Phoenix twenty-five lots which they had subdivided from their 32-acre tract known as Munson Hill Farm. Phoenix agreed to pay a total sum of $112,500.00 ($4,500.00 for each lot), $20,000.00 in cash at the date of settlement and the balance to be evidenced by a note for $92,500.00 to be secured by a purchase money deed of trust. Wilkins agreed to assume responsibility, at his cost and expense, for the installation of streets, sidewalks, water mains, sewerage and utilities. The contract also permitted Phoenix, at its option, to acquire four additional lots at $4,500.00 each.

On October 2, 1958, settlement was completed. Wilkins received the purchaser's deed of trust note for $92,500.00 and netted from the cash payment the sum of $14,236.25 after deduction of commissions, attorney fees and other costs and expenses. Subsequently, Phoenix exercised its option and on September 18, 1959, settlement was made for the sale of four additional lots, at which time Wilkins received a note for $14,800.00, secured by deed of trust, and a cash payment of $2,229.70.

The note in the amount of $92,500.00 was pledged by Mr. and Mrs. Wilkins to the Mount Vernon Trust and Deposit Company as collateral security for loans to them totalling $90,000.00, evidenced by their five separate notes. The proceeds from the $92,500.00 note were assigned to the bank. The procedure employed in connection with the sale of the twenty-five lots and the payment therefor was as follows: Phoenix would notify the settlement attorneys who would prepare an itemized statement of charges then owing whereupon Phoenix would transmit payment to the settlement attorneys who would forward such payment to the bank. The bank credited these payments as received to reduce the amount of the Wilkins loan. Mr. Wilkins was notified of each curtailment by means of a credit memorandum sent to him by the bank.

It was from these credit memoranda that Wilkins determined, for income tax purposes, how much he received from the lot sales. Payments from the sale of these lots were received in the years 1958 and 1959, as well as 1960, when Wilkins received the last payment; however, the exact amount received in each year is in dispute. In 1960 Wilkins completed performance of his obligations under the agreement. To his 1959 income tax return Wilkins had appended a note stating he was awaiting the termination of what he believed to be "a continuing transaction" before he reported the final capital gain which he estimated would be about $20,000.00 with a resulting tax of $2,500.00.

In a joint return for 1960, Wilkins purported to report the income received from the sale of all the lots of the Munson Hill Farm. He reported total receipts from the sale of this property as $86,763.19. He claimed expenditures with respect to improvements of the property in the amount of $80,256.24, and a capital gain of $6,506.95. The Government claimed that Wilkins received $125,779.84 as income from these sale transactions and, after allowing him various expenses as deductions, determined that he understated his *gain* by more than $39,000.00. To prove these understatements, the Government offered the testimony of Mount Vernon's bank teller, check stubs and the credit memoranda sent to Wilkins. No challenge is made to the sufficiency of this evidence.

In addition, the Government contended that Wilkins failed to fully report other income, and that he took improper deductions. These matters are summarized briefly. In 1956 Wilkins had received $15,568.50 as an award for a certain other tract of land which had been taken by condemnation. In reporting this income in 1960, Wilkins claimed over $10,000.00 in deductions for installation of a street and the discharge of an indebtedness secured by a mortgage. At trial, evidence was produced to show that over $7,000.00 of these expenses were fictitious and that the gain was over $12,-

000.00. Evidence was also introduced to prove that Wilkins understated by more than $2,000.00 the amount of interest received by him in 1960 and that he failed to report $620.00 received in the same year by Mrs. Wilkins from another source. It was also shown that he overstated interest paid by him in 1960 by about $200.00 and overstated depreciation of his automobile in 1960 by about $887.00. These contentions were proved by the testimony of bank representatives, statements from Wilkins' own deposition and by the return itself. The accuracy of this proof is not questioned.

The indictment was returned in December 1965. The defendant attacks the conviction for the year 1960 on the ground that no income tax was owing by him in that year for the income which he had received in the years 1956, 1958, and 1959. It is argued that in the absence of fraud on the part of Wilkins the six-year statute of limitations had barred prosecutions for the years 1956 and 1958. 26 U.S.C. § 6531.

The Government counters with the argument which underlay its theory at trial, that since Wilkins elected to report this income in his 1960 return, even going so far as to append a note to this effect on his 1959 return, he was bound by this election. The Government points out that there is no question here of civil liability; that Wilkins is charged in the indictment with an attempt to evade taxes and that when he filed his return in 1960 if he was attempting to avoid what he felt were taxes due for that year a jury could find him guilty of violating 26 U.S.C. § 7201 irrespective of any civil liability.

■ The statute which serves as the basis of the indictment, 26 U.S.C. § 7201, simply provides "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony * * *." However, the pronouncements of the courts make it clear that an essential element of the offense of attempting to evade taxes due in any given year is the existence of a deficiency for that year although the statute does not specifically so provide. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Lawn v. United States, 355 U.S. 339, 361, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Sherwin v. United States, 320 F.2d 137, 149 (9 Cir. 1963); 10 Mertens, Law of Federal Income Taxation, § 55A.06 (1964 Rev.).

In support of its argument the Government relies heavily on this court's decision in Morrison v. United States, 270 F.2d 1 (4 Cir.), cert. denied, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 150 (1959). That was an appeal from a conviction on a charge of attempting to evade and defeat income taxes. The taxpayer had employed what was conceded by the Government to have been an improper method of accounting. However, this court held that if a taxpayer makes such an improper election he is bound by it and cannot complain when the Government employs the same method at trial to prove a violation of the law. The Government argues that *Morrison* is apposite in the instant case because Wilkins treated income received in earlier years as received in 1960, the year of indictment, and then failed to report all of it.

Wilkins' theory in treating the income from the sale of the lots as received in 1960 was that he could not determine his costs for the installation of streets and sidewalks, mains, sewerage and utilities until he completed these agreed undertakings. In the note appended to his 1959 return he referred to the contract as "a continuing transaction." Section 451-3(b) of the Internal Revenue Regulations permits a taxpayer who had entered into a long-term contract to report income derived therefrom in the taxable year in which the contract is finally completed and accepted. By section 451-3(a), long-term contracts are defined as "building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted."

The Government urges that since Wilkins had to make installations involving expenditures pursuant to the contract he made a proper election under section 1.451–3 of the regulations. However, Wood v. C. I. R., 245 F.2d 888 (5 Cir. 1957), *a civil case,* clearly states that contracts "for the sale of real estate are in no sense building, installation or construction contracts * * *." Id. at 892. In *Wood* the taxpayers, residents of Texas, sold real estate by mail and agreed to construct roads and streets. Taxpayers used the completed contract method in reporting the income from such transactions. They did not report income from the sale of a tract until the final payment was received and then deducted as business expenses the amounts paid by them for the construction of the' streets and roads. It was held that the taxpayers could not avail themselves of the long-term contract provision of the Regulations. See generally 2 Mertens, Law of Federal Income Taxation, § 12.132.

■■ In addition to *Wood,* it is clearly indicated in a series of civil cases that while the Commissioner of Internal Revenue has discretion to make computations and adjustments in order to clearly reflect income he is not empowered to add to a taxpayer's gross income for a given year an item which should have been reported in an earlier year. The taxpayer's mistaken omission from income of an amount properly includible in his income for a given year does not nullify the statute of limitations on assessment and collection of income taxes. See Commissioner of Internal Revenue v. Frame, 195 F.2d 166 (3 Cir. 1952); Commissioner of Internal Revenue v. Mnookin's Estate, 184 F.2d 89 (8 Cir. 1950); Clifton Manufacturing Co. v. Commissioner of Internal Revenue, 137 F.2d 290, 150 A. L.R. 749 (4 Cir. 1943).

In Commissioner of Internal Revenue v. Frame, supra, a taxpayer who kept his books on the accrual basis had filed his income tax returns for the years 1942–1945 on the cash basis in violation of the Internal Revenue Code. In 1945, the Commissioner, after examining the return for that year, adjusted taxpayer's income for that year to the accrual basis as reflected in his books and added a sum representing accounts receivable appearing on the books as of December 31, 1944. The Commissioner explained that his adjustment was made to take into consideration items of income not reflected in the return for the prior year (1944). The Tax Court held that the Commissioner erred in adding sums for accounts receivable in 1944 to gross income in 1945. The Third Circuit affirmed, holding that "the accounts receivable in question were income of the taxpayer for the years prior to 1945 and were not taxable to him in the latter year even though he had erroneously failed to report them in his returns for the prior years." 195 F.2d 166.

■ This principle applies to the instant case. While Wilkins had mistakenly failed to report income from the sale of the Munson Hill tract in the years in which he received it these amounts were not taxable to him in the prosecution year, 1960.

The Government argues that the gravamen of an indictment for violation of section 7201 is an *attempt* to evade or defeat tax obligations and that it is necessary to follow the taxpayer's method in order to demonstrate what he was attempting to do. It relies upon Morrison v. United States, supra, 270 F.2d 1, and subsequent cases which apparently undertake to apply *Morrison* principles. However, in *Morrison* evidence tending to show unpaid taxes in years prior to the prosecution years was admitted, not to prove a tax deficiency in the prosecution years, but to show a pattern of dishonesty and false reporting of income in order to prove willfulness. In arriving at these figures for the earlier years the prosecution, in *Morrison,* followed defendant's peculiar method of accounting. While this court permitted the Government to use defendant's accounting method, which

was admittedly an improper method, it clearly indicated the purpose of such evidence. Referring to this evidence the court said,

"It is quite true that such a computation would not be admissible if inquiry here was directed simply to the tax obligations of the taxpayer. In this criminal proceeding it was necessary to establish not only that the tax liabilities here were understated, but that the understatement was attributable, at least in part, to the fact that the taxpayer's returns were not honestly prepared. Proof of the latter fact could only be accomplished by adopting and consistently applying the taxpayer's own method of accounting, despite the fact that we are all agreed that the method, itself, is improper, or less reliable than some other method." 270 F. 2d 3-4.

■ If *Morrison* is apposite here it appears to support defendant's position that evidence of unpaid taxes in years prior to the prosecution years is not admissible to prove a deficiency for the prosecution years. Reliance on cases involving the net worth theory of prosecution subsequent to *Morrison* is also misplaced. This is not a "net worth" case. Wilkins is being prosecuted on Count One for understating his taxable income for the year 1960. While we have found no criminal case directly in point, there are several cases which are helpful because of the analogous legal and factual setting.

■ In Koontz v. United States, 277 F.2d 53 (5 Cir. 1960), defendant was tried on a one-count indictment under section 7201's predecessor. The gist of the indictment was that defendant had claimed a $1200 exemption for his wife who was deceased. By way of defense, counsel attempted to show first a technical error and second that there was no deficiency owing to the government because defendant had taken a capital loss for an item which was a loss of ordinary income and that this was greater than the $1200 defendant had claimed as an

exemption. At trial, the defense summarized its theory as follows:

" ' * * * the fact that the return is mistakenly filled out, even willfully or knowingly, alone does not constitute the offense. There must be some loss of revenue to the Government in order to constitute the offense.' " 277 F.2d at 54.

The District Court refused to permit the presentation of this theory of defense and instructed the jury that the only issue in the case was whether defendant had willfully claimed his deceased wife as an exemption. As to defendant's tendered issue the court took the view that this was a matter to be litigated on the civil side. The Fifth Circuit granted a new trial, holding that the law was as defendant contended and that he was entitled to have a jury trial on the issue tendered by him. 277 F.2d 55. The principle that a defendant in a tax evasion case is entitled to show that no money was owing to the government in the prosecution year has been widely accepted. Willingham v. United States, 289 F.2d 283, 285-86 (5 Cir.), cert. denied, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31 (1961); Jones v. United States, 282 F.2d 745, 747 (4 Cir. 1960), cert. denied, 365 U.S. 842, 81 S.Ct. 799, 5 L.Ed.2d 808 (1961); McClanahan v. United States, 272 F.2d 663 (5 Cir. 1959); Elwert v. United States, 231 F. 2d 928 (9 Cir. 1956); United States v. Bender, 218 F.2d 869, 871 (7 Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L. Ed. 1253 (1955); Clark v. United States, 211 F.2d 100, 103 (8 Cir. 1954), cert. denied, 348 U.S. 911, 75 S.Ct. 289, 99 L. Ed. 714 (1955).

■ We think this principle applicable to the case at bar. Even assuming that Wilkins had filed his 1960 tax return with the intent to evade his tax obligations, he was entitled at trial, upon a showing that there was no obligation to report income from the earlier Munson Hill transactions in his 1960 return, to have evidence of his understatements excluded. The court below erred in permitting Count One to go to the jury on

the Government's theory. This error was compounded by the court in its charge to the jury, a portion of which is set out in the margin.[1]

The Government argues that there is ample evidence, independent of the pre-1960 transactions, to show that Wilkins made false statements concerning income unquestionably received in 1960 and included in the 1960 return. Primarily, however, the Government's case on Count One was devoted to Wilkins' failure to report income actually derived from transactions which occurred prior to 1960, income which was not attributable to 1960. Evidence was introduced by the prosecution to show that Wilkins understated his 1960 taxable income by more than $28,000.00, when not more than approximately $4,000.00 of that amount was attributable to the prosecution year 1960. Defendant argues that the introduction of so much improper evidence, the permitted comments thereon and consideration thereof gravely prejudiced the jury against him. We find sufficient merit in this argument from which to conclude that the conviction of the defendant on Count One should be set aside and a new trial on that count should be awarded. It will be so ordered.

## COUNTS TWO, THREE AND FOUR (YEARS 1961, 1962, 1963)

The second, third and fourth counts of the indictment allege that in the years 1961 through 1963 Wilkins received, as income, rentals (ground rents) from property which he and his wife had leased to a corporation, United Properties, and that such income was not reported in the returns for those years. On June 17, 1961, Wilkins and his wife entered into an agreement by the terms of which they leased twelve and one-half acres of the Munson Hill tract to United Properties for 99 years for a total rental of $2,213,820.00. The lease was formally executed on August 10, 1961. Wilkins received the following amounts from United Properties: $22,590.00 in 1961, $22,590.00 in 1962, and $18,072.00 in 1963. These amounts, shown on the books and records of United Properties to have been payments of rentals, were not reported in the taxpayer's returns for those years.

Wilkins contended that these receipts were, in reality, payment toward the agreed purchase of Wilkins' house which stood on the leased tract. He claimed that since he planned to expend this money for another dwelling house, such payments were nontaxable. He further contended that, as a condition precedent to entering into the lease, there was a binding agreement that United Properties would purchase the Wilkins house. The formal lease between United Properties and the defendant made no reference to any such agreement. According to the lease the total sum due thereunder was the aggregate of the rentals for a period of 99 years. During the pre-indictment investigation conducted by agents of the I.R.S., Wilkins told Agent Hutnick that he had searched his files for a copy of the purchase agreement and could not find it but that he would attempt to secure a copy from Mr. Meltzer, president of United. Subsequently, Wilkins submitted to Hutnick a letter purporting to show that there was such an agreement signed by Wilkins and Meltzer. The letter was represented as having been written on August 15, 1961, the date shown thereon. At trial Mrs. Wilkins testified to such an agreement as did J. Fuller Groom and Joseph Miller,

---

1. The jury was instructed as follows:
    "So that there will be no misunderstanding on your part, Mr. Wilkins is bound by the method he elected to file his return. He is bound and the government is bound to follow the method in his criminal case that Mr. Wilkins elected to use in filing his 1960 return, He will not be heard, should not be heard in saying, 'Well, I don't owe any tax because, had I filed it in 1956'—I am talking about the condemnation part—'or had I used an installment basis, or some other basis, I wouldn't owe all this.' He elected to treat the subdivision and the condemnation and the whole thing as a completed transaction in 1960. He said the whole thing was completed, and he reported it to the government accordingly, and he figured it on a completed basis."

real estate agents. Mr. Meltzer was deceased at the time of trial and no testimony was introduced to explain the circumstances under which his signature on the letter was obtained.

The Government produced the letter dated August 15, 1961, but presented as witnesses a document-examiner and the secretary who prepared the letter to prove that the letter was not written on August 15, 1961, but was actually prepared sometime in January or February 1964. Confronted with this evidence, the defense then stipulated that the letter was actually written in 1964. The Government's theory was to show defendant's guilty state of mind by proving that he had the letter drawn up after he was under investigation by the I.R.S. and had it dated in 1961 in order to show that a contract of purchase did, in fact, exist at that time.

■ The only issue with respect to these 1961–1963 counts is whether there was sufficient evidence from which the jury could properly conclude that Wilkins willfully attempted to defeat and evade his income tax obligations. The elements of the section 7201 offense are willfulness, a tax deficiency and some affirmative act constituting an attempted evasion of the tax. Sansone v. United States, supra, 380 U.S. at 351, 85 S.Ct. 1004; Lawn v. United States, supra, 355 U.S. at 361, 78 S.Ct. 311; United States v. Beacon Brass Co., 344 U.S. 43, 46, 73 S. Ct. 77, 97 L.Ed. 61 (1952). See also Spies v. United States, 317 U.S. 492, 498–499, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

In this case it was necessary that the Government show that income taxes were owing and that Wilkins willfully attempted to defeat or evade them. To prove that there was a tax deficiency it was necessary to establish that Wilkins received income which he did not report in his return for those years. The Government undertook to establish this by introducing the lease agreement providing for the payment of *rentals* during the term of 99 years, evidence that Wilkins had received rentals during the years in question and by showing that such re-

ceipts were not reported as income in his returns for those years. Wilkins then attempted to defend on the theory that these payments were not rental receipts but were payments for the sale of his house which he intended to reinvest in a new home as permitted under the Internal Revenue Code. He attempted to show a contract of sale and purchase of the Wilkins home located on the leased premises and introduced the testimony of Mrs. Wilkins, J. Fuller Groom, Joseph Miller and his own deposition. In finding Wilkins guilty the jury apparently rejected the testimony offered by his witnesses and accepted the contention of the Government that the defendant's story as to the sale of the home was pure fabrication.

■ As proof of Wilkins' willfulness the Government introduced evidence to show that he prepared a letter in 1964 purporting to confirm the asserted existence of a contract of sale and that he attempted to make it appear that the letter was written in August 1961. If this were true the jury could infer that Wilkins fabricated evidence to support his explanation to the I.R.S. of his failure to report income. Subsequent acts of a defendant, such as the fabrication of evidence or false explanations which will aid his defense, are clearly admissible to prove his guilty state of mind. Wilson v. United States, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); Corey v. United States, 305 F.2d 232, 238 (9 Cir. 1962); Rizzo v. United States, 304 F.2d 810, 830 (8 Cir. 1962); United States v. Simone, 205 F.2d 480, 483 (2 Cir. 1953); 2 Wigmore on Evidence, § 278 (3d ed. 1940).

■ The jury was entirely free to accept or reject such evidence. Indeed the evidence that in 1964 Wilkins had prepared and presented to I.R.S., after he was under investigation, a letter purporting to have been written in 1961 probably weighed heavily in the minds of the jurors. We cannot say that the inference of guilt was an unreasonable one and not supported by the evidence. Judge Frank,

in dealing with the same problem, aptly stated:

"Defendant's story may have been true; * * *. But the undoubtedly grave problem of providing adequate safeguards against convictions of the innocent must be solved in some way other than that of refusing to allow reasonable inferences to be made." United States v. Allen, 159 F.2d 594, 598 (2 Cir. 1946).

## INSTRUCTIONS

Defendant also complains that portions of the court's charge to the jury were prejudicial. Although no objections were made at that time as required by Rule 30, Fed.R.Crim.P., defendant asks this court to notice certain instructions as plain error and as affecting his substantial rights under Rule 52(b), Fed. R.Crim.P.

The first of these instructions, set out in the margin,[2] deals with intent and was subsequently repeated to the jury, at its request, after deliberations had commenced. Defendant contends that the second sentence of this instruction, beginning with the words "so, unless the evidence in this case * * *" tended to shift the burden of proof to defendant to come forward with evidence that he did not intend the natural and probable consequences of his acts. In addition, defendant asserts that an essential element of a violation of 26 U.S.C. § 7201 is specific intent but the instruction deals with the average person rather than the particular defendant, Wilkins. Defendant cites Mann v. United States, 319 F.2d 404 (5 Cir. 1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), as supporting his contentions. It is true that in *Mann* this identical in-

struction was held to constitute reversible error even though no exception was made at trial. The court reasoned that

"If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results." Id. at 409.

However, a substantially similar instruction is favorably regarded by the writer of a manual of instructions employed by many federal judges.[3] Such an instruction has been recently approved by the Ninth Circuit in Sherwin v. United States, supra, 320 F.2d at 148–151. This charge, even when repeated, was general in nature and did not deal specifically with violations of section 7201. Compare Sherwin v. United States, supra, with Bloch v. United States, 221 F.2d 786, 788 (9 Cir. 1955).

This instruction was one in a series of instructions dealing with willfulness and specific intent. It seems highly improbable that the jury would pick out and focus its attention on one particular clause and abstract the notion that the defendant had the burden of proof to introduce evidence to prove he did not intend the natural and probable consequences of his acts. Furthermore, the court clearly emphasized that the Government had the burden of proving each and every element of the offenses charged beyond a reasonable doubt. To this effect the court stated "the law never imposes upon a defendant in a criminal case the burden or duty of producing *any evidence* * * *.

---

2. "As a general rule, it is reasonable to infer that a person ordinarily intends all of the natural and probable consequences of acts knowingly done or knowingly omitted. So, unless the evidence in the case leads the jury to a different or contrary conclusion, the jury may draw the inference and find that the accused intended all the natural and prob-

able consequences, which one, standing in like circumstances and possessing like knowledge, should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

3. Mathes, Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 78 (1961).

Now as I told you, *there is no duty on the defendant to produce any evidence."* (Emphasis supplied.) Even when this instruction was repeated it was one in a series. Again the jury was instructed that it was the Government's duty to prove its case beyond a reasonable doubt. Legatos v. United States, 222 F.2d 678 (9 Cir. 1955).

We also feel that the court properly instructed the jury as to willfulness and specific intent. The defense theory was that Wilkins was ignorant of his tax responsibilities. It is difficult for this court to see how an instruction such as "the defendant's acts in connection with his income tax are not wilful if they are done through inadvertence, carelessness, or honest misunderstanding of what the law requires," could possibly leave any doubt that, in order to convict, the jury must find that Wilkins specifically intended to evade or defeat his tax obligations. When a charge as a whole fairly calls to the attention of the jury the necessity of proof of willfulness in an income tax evasion case, an isolated part of a charge that a person is presumed to intend the natural consequences of his acts does not constitute prejudicial error. Legatos v. United States, supra; Windisch v. United States, 295 F.2d 531 (5 Cir. 1961). But cf. Mann v. United States, supra, 319 F.2d at 410. We are not inclined to reverse the convictions in the instant case because of asserted errors in instructions, particularly since no objection was interposed at trial and the court below had no opportunity to clarify the charge or to omit therefrom

any portion thereof which, standing alone, the defendant might deem unfair and objectionable.

■ Finally, defendant contends that *two instructions by the court suggested* that in order to find Wilkins innocent it was necessary for the jury to conclude that he was either a fool or abysmally ignorant. These instructions are set out in the margin.[4] Wilkins asserts that it was improper to suggest this conclusion as an alternative to guilt. We find this argument totally lacking in merit. The defendant would have had the jury conclude that defendant, an educated man,[5] was in reality stupid when it came to income tax matters. Defendant's trial counsel in his opening argument and in his summation used the words "stupid" and "educated fool" in his attempt to persuade the jury to acquit his client. The court in giving these instructions, far from prejudicing Wilkins, charged the jury in keeping with Wilkins' theory of defense.

■ Defendant contends that the court's error as to the admission of evidence with respect to the offense charged in Count One was so great as to prejudice the jury in its consideration of the remaining counts. However, in view of the fact that there was substantial independent evidence to support the defendant's convictions on Counts Two, Three and Four, we think the taint attaching to the presentation of Count One was not so great as to permeate or materially affect the convictions on the remaining counts.

---

4. "Now it is up to you to determine * * * whether he did it wilfully and intentionally or whether he did it as a result of abysmal ignorance. * * *."
"* * * *, if any doubt about it in your mind that it was wilful and deliberate, that it was only done by absymal ignorance and the rankest kind of stupidity, * * * you should find him not guilty."

5. The Government calls attention to certain background facts: Mr. Wilkins was well educated; he obtained an A.B. degree in 1931; he was graduated from law school in 1935 and received a Master's degree in 1938; he had worked for a short time as a legal editor for Prentice-Hall Tax Service and was an attorney and corporate planning consultant in Washington, D.C.; Mrs. Wilkins, herself a law graduate, was not indicted since the joint returns for the years in question were prepared exclusively by her husband; she was a member of the Fairfax County Board of Supervisors from 1952 to 1963 as well as the Fairfax County Planning Commission; Mr. Wilkins was a subscriber to published tax services and tax guides.

Defendant's conviction and sentence on Count One are set aside and the defendant is awarded a new trial on that count. The convictions and sentences on Counts Two, Three and Four are affirmed.

Reversed as to Count One; affirmed as to Counts Two, Three and Four.