**UNITED STATES, Appellee,**

v.

**Robert J. CALLANAN, Appellant.**

**Nos. 71-1377, 71-1582.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 8, 1971.

Decided Dec. 10, 1971.

Norman P. Ramsey, Baltimore, Md. (Randy H. Lee, Baltimore, Md., on brief), for appellant.

Richard B. Buhrman, Atty., Tax Div., Dept. of Justice (Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, and John P. Burke, Attys., Tax Div., Dept. of Justice, and George Beall, U. S. Atty., on brief), for appellee.

Before BUTZNER, RUSSELL and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

Robert J. Callanan was convicted of attempting to evade income taxes in 1962 and 1963 in violation of 26 U.S.C. § 7201.[1] His assignments of error chal-

---

1. § 7201. Attempt to evade or defeat tax.
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

lenge the sufficiency of the evidence, the admission of certain testimony, and the denial of motions for a mistrial and for a new trial on the ground of prejudice. During the course of the trial the district judge painstakingly considered these points. His rulings were proper, and we affirm the convictions for both tax years.

## I

■ To establish that a taxpayer has violated § 7201 of the Internal Revenue Code the government must show a substantial tax deficiency, an affirmative act by the taxpayer to attempt evasion of the tax, and that the taxpayer acted willfully. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). These requirements have been met, the government contends, because the evidence showed that Callanan attempted to evade additional taxes amounting to $21,642.41 in 1962 and $9,274.05 in 1963 by filing false returns from which he knowingly omitted specific items of income aggregating $34,878.93 in 1962 and $15,011.15 in 1963.

Callanan, a lawyer, maintained two bank accounts for his office in Baltimore, Maryland and one bank account for his office in nearby Glen Burnie. Receipts deposited in one of the Baltimore accounts and the Glen Burnie account were recorded in cash books which identified the source and nature of the funds. Income noted in these cash books was properly reported.

The second Baltimore account, for which no corresponding cash book was kept, was called the "escrow" account. Initially, it was designed to receive and disburse real estate settlements and loans. Soon, however, large sums of money unrelated to sales and mortgages of real estate were deposited in the escrow account. Other sums of money were deposited in savings accounts or received as cash. Through documentary evidence and the testimony of clients and other lawyers, the government introduced proof that these sums of money

were legal fees. An internal revenue agent testified (over objection of Callanan discussed in Part II) that these specific fees were not included in the gross income Callanan reported in 1962 and 1963.

■■ Filing a false return is an affirmative act constituting an attempted evasion of taxes within the meaning of § 7201. Sansone v. United States, 380 U.S. 343, 352, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). The statute's requirement that the attempt be willful is not ordinarily met, however, by showing the understatement of income in the return. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Bagdasian, 398 F.2d 971, 973 (4th Cir. 1968). The government must also supply proof that the taxpayer knew of the understatement. Sansone v. United States, 380 U.S. 343, 352, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Callanan insists that the government has failed to prove that he knew that any fees had been omitted from the income reported on his returns. He did not testify, but during the investigation preceding the indictment he gave several exculpatory statements to the effect that only fees from the settlement of real estate transactions were deposited in his escrow account, that he did not know his secretary had deposited other fees in this account, and that he thought the accountant who set up his books and prepared his tax returns had properly included all of his fees in the amount reported as gross income.

The government, however, introduced testimony and documentary evidence contradicting Callanan's exculpatory statements. Witnesses testified that he directed his employees to deposit certain fees not related to real estate settlements in the escrow account. The fees deposited in this account were not clearly identified as income in any book or journal or in the records kept in connection with the escrow account. The government also showed that Callanan, con-

trary to his explanations, was familiar with his books and bank accounts.

The government evidence disclosed that Callanan personally received other fees which he did not record in any account book or deposit in any of his office checking accounts. The jury could justifiably conclude that Callanan's failure to record fees he personally received or to deposit them in his office bank accounts made it virtually impossible for his accountant to include them in the tax returns.

■ In view of this evidence, neither the trial court nor the jury were required to find that Callanan was the innocent victim of mistakes made by his secretary and his accountant. Guilty knowledge and willfulness may be inferred from the "handling of one's affairs to avoid making the record usual in transactions of the kind . . . ," Ingram v. United States, 360 U.S. 672, 677, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), from false explanations, United States v. Wilkins, 385 F.2d 465, 472 (4th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1144 (1968), and from a pattern of concealment of true income from one's accountant. United States v. Madden, 300 F.2d 757, 758 (4th Cir. 1962).

In summary, we find no merit in Callanan's contention that the evidence is insufficient to sustain his conviction. Substantial evidence taken in the light most favorable to the United States tended to show that he was guilty beyond a reasonable doubt of willfully attempting to evade taxes by knowingly omitting a substantial portion of his income from his return. The district judge, therefore, committed no error by overruling the motion for a judgment of acquittal and submitting the case to the jury. Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950).

II

■ Protesting that testimony of a revenue agent was conclusory and un-supported by the evidence, Callanan claims the district court erred in permitting the agent to testify that specific items of income mentioned in the bill of particulars were omitted from the 1962 and 1963 tax returns.

The government exhibited all of Callanan's pertinent records, consisting primarily of the Baltimore and Glen Burnie office books of account, the records of his checking accounts, records of certain savings accounts, correspondence concerning certain fees, the worksheets used by his accountant, and his tax returns. Having examined these exhibits, the witness testified that the total gross income shown on each year's worksheets prepared by Callanan's accountant corresponded with the total gross income reported on each year's tax return. He also testified that the accountant properly included all of the income reported in the Baltimore and Glen Burnie cash books. This income had been deposited in the business checking accounts for these offices. The accountant also included some of the fees arising out of real estate settlements that had been deposited in the escrow account. The omitted items of income, the revenue agent testified, fell into two classifications: (a) fees that were not recorded in any cash book and not deposited in any office checking account; (b) fees that were deposited in the escrow account and not recorded in any cash book. The bulk of these omitted fees were not connected with real estate settlements.

Thus, with the exception of a relatively small amount of omitted real estate settlement fees, the omitted income could not be readily identified by examination of any account book or checking account. The government showed their nature and amount through correspondence relating to them, the testimony of clients and other lawyers, and the admissions Callanan made during the course of the investigation.

But Callanan complains that the government's witness did not sufficiently

analyze the Baltimore business account to disprove that omitted items of income were not included by the accountant in his computation of gross income. We find no merit in this argument. Deposits in the Baltimore business account tallied with the entries in the Baltimore cash book where income was adequately identified. The government makes no claim that the income in the office business account was not reported. Moreover, the cash book contains no entries showing that the items, claimed by the government to have been omitted, were in fact included on the accountant's worksheets or the returns. All of the books and records were introduced into evidence, and if the revenue agent had been mistaken, the defendant could have shown on cross examination the inclusion of any items claimed to have been omitted.

Kirsch v. United States, 174 F.2d 595 (8th Cir. 1949), on which the defendant primarily relies, dealt with an entirely different situation. There, a revenue agent contending that all of a money changer's bank deposits were income, testified: "If Kirsch went to his safety deposit box and took out $2,000.00 . . . to cash checks and then deposited $2,400.00, we would include the entire $2,400.00 as income. We included everything that went into those deposits." 174 F.2d at 599. Since the witness's testimony was so patently illogical, the court of appeals, reversing Kirsch's conviction, refused to allow an expert to base his conclusions on it.

Here, in contrast to *Kirsch,* the government did not designate as income hundreds of thousands of dollars that flowed through Callanan's checking accounts during each of the tax years. The specific sums that the government claimed as unreported income were clearly identified as fees by documentary evidence and by witnesses who dealt with Callanan. The vice disclosed by *Kirsch* is missing. Here the revenue agent did not base his conclusions about the omitted income on assumptions.

He based it on proof that showed each item was in fact a fee.

The district judge properly overruled the objections to the testimony of the revenue agent. Even if his statements about the omission of the items are deemed conclusory, the witness was competent, as a duly qualified expert, to express an opinion based on underlying facts which had been admitted into evidence. Turner v. United States, 222 F. 2d 926, 932 (4th Cir. 1955); Beaty v. United States, 213 F.2d 712, 719 (4th Cir. 1954).

### III

Callanan also complains that the district court improperly admitted evidence about payments of large sums of money Callanan made to two members of the Board of County Commissioners of Anne Arundel County, one of whom was his accountant. Callanan deducted these payments on his tax returns as "Legal and Professional Fees to Associates." Since the government did not disallow these deductions, Callanan contends that evidence about them was irrelevant and prejudicial.

Among the specific items of omitted income claimed by the government were thousands of dollars which the evidence showed had been paid to Callanan as fees for obtaining the rezoning of property in Anne Arundel County, Maryland. These receipts were deposited in the escrow account. They were not listed on any book of account as fees. During the pre-indictment investigation, Callanan told a revenue agent that he paid this money to two members of the board of commissioners who, he said, controlled zoning. At the trial, the men named by Callanan admitted receipt of the money, but claimed it was paid for other reasons. They denied any wrongdoing.

The district judge permitted the government to show that Callanan had deducted the payments but he would not permit the deductions to be characterized as illegal or as bribes or payoffs.

The admission of this evidence was not error. To establish that the zoning fees were income to Callanan it was imperative for the government to show that he was not—as he contended—a mere conduit of money to other persons. Clearly, since Callanan deducted the payments to the board members from his gross income, testimony about the deductions was relevant to show he should have included the receipt of the zoning fees as gross income on his return. The testimony was relevant also because it disclosed a motive for not depositing these fees in the office account and for not listing them along with other fees in the defendant's cash book. Although a defendant's guilt may not be established by proof of unrelated offenses, relevant testimony is not rendered inadmissible because it may expose questionable or improper conduct. United States v. Dutsch, 357 F.2d 331, 333 (4th Cir. 1966); Welch v. United States, 371 F.2d 287, 293 (10th Cir.), cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966).

## IV

Callanan asserts that the conduct of the government's attorneys throughout the proceedings was so unfair and prejudicial that he is entitled to a new trial. Only two of his complaints merit comment.

Over objection, the district judge permitted a former United States Attorney for the District of Maryland to testify that Callanan had stated at a pre-indictment conference attended by his attorneys that he "never looked at a book." Also, over objection the court permitted an Assistant United States Attorney to testify that at another conference Callanan said he never told his secretary "where to deposit 25 cents." Callanan claims that the testimony was "a prejudicial attempt to interject into the proceedings the prestige of the office of the witnesses."

Callanan's charge is untenable. The attorneys who testified did not otherwise participate in the trial of the case. Since no revenue agent was present at the conferences, the government lacked other witnesses to Callanan's denials. His exculpatory statements were relevant to prove willfulness, United States v. Wilkins, 385 F.2d 465, 472 (4th Cir. 1967), cert. denied, 390 U.S. 951, 88 S. Ct. 1043, 19 L.Ed.2d 1144 (1968), and the government should not be deprived of this essential evidence because of the prominence of its witnesses. We conclude, therefore, that the district judge committed no error by overruling Callanan's objections to their testimony.

Just before the final argument, the prosecutor asked the court whether he could describe the payments Callanan made to the county commissioners as "payoffs." The court admonished him not to use inflammatory language.[2] During the course of the argument the prosecutor said the deductions were "not lawful" and not "legitimate." He also told the jury that the government did not charge Callanan with taking false deductions, but that the deductions were relevant to show intent.[3] After the sec-

---

2. The district judge instructed the prosecuting attorney as follows:

"I do not want you to use inflammatory language in terms of the payments to [the county commissioners]. You can talk about them in connection with the zoning problem, but I ask you not to use inflammatory language.

It is quite clear that the evidence which [the defendant's attorney] objected to came in for purposes of establishing intent and in connection with motive, not reporting certain specific items of income that are involved in this case, but I do not want any inflammatory language used.

It seems to me that understatement . . . sometimes can be as effective as overstatement."

3. The prosecutor stated in his closing argument:

"So in effect, what the defendant is doing with respect to this Ritchmount fee, this $6,291.66 fee, is he took an expense for paying it out to [the county commissioners], because he said they controlled the County—the zoning activities, and he didn't report it as income, so he got a double tax benefit,

ond reference to the illegality of the deductions, the defendant objected and moved for a mistrial. The judge sustained the objection, but denied the motion for a mistrial. He reprimanded the prosecutor and immediately gave the jury a special charge in which he explained that the legitimacy of the payments and the deductions was not an issue in the case.

Insinuation and innuendo about collateral matters should play no part in the prosecution of a criminal charge. United States v. Elmore, 423 F.2d 775, 780 (4th Cir.), cert. denied, 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970). And the prosecutor's argument must be specially scrutinized when the trial judge, alert to potential prejudice, has cautioned restraint. If it is probable that a prosecutor's argument has engendered prejudice, the defendant must be afforded a new trial. Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Wallace v. United States, 281 F.2d 656, 668 (4th Cir. 1960). The remarks of the government's attorney were improper. The legitimacy of the deductions had not been raised in the bill of particulars and it should not have been introduced into the case. Whether the untoward remarks prejudiced Callanan must be tested by "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061, 1079 (D.C.Cir.1969).

The record discloses that this was not a close case. The government proved that time and again Callanan received fees without recording them in any book of account and indeed often without depositing them in any of his office checking accounts. Callanan's explanations were discredited, and he offered neither his own testimony nor the testimony of any accountant to disprove the government's evidence. The legitimacy of the deductions did not directly bear on the central issue of the case. The deductions were relevant to show intent, and, therefore, fair comment about them was permissible. Only their characterization as unlawful was forbidden. Moreover, the zoning fees, with which the deductions were linked, were not the only items of omitted income on which the government relied. For each tax year the evidence disclosed substantial unreported income that in no way was connected with Callanan's payments to the county commissioners. Finally, we believe the measures taken to mitigate the effects of the prosecutor's remarks were sufficient to protect Callanan from prejudice. When the prosecutor assailed the deductions as illegal he told the jury that the government was not charging

and I submit to you, ladies and gentlemen, that that is absolute greed, and that is the mark of tax evasion, greed, taking a deduction which was not lawful in the first instance because it was a payment to a County Commissioner, which he said was made because these Commissioners controlled the various zoning activities, and then not even reporting the zoning fee itself.

But [the defendant's attorney] told you on opening statement that this case does not involve fraudulent deductions. And he's right. The Government does not charge Mr. Callanan with a false deduction in this case. But I only tell you about the item to point up the intent. It's revelant to show intent. We are not claiming that he took a false deduction, but we are stating this fact to show the whole scheme, his whole method of operation with respect to this item.

    .     .     .     .     .

Again I submit that there is a real motive for him to not report certain of these zoning fees. Again I refer to my doubt tax benefit theory. It's my own phrase.

With respect to the Ritchmount item, for example, he's receiving a $6,291.66 fee and he tells Agent Sikorsky on several occasions by way of saying this is not income. I gave this money to [the county commissioners].

Well, it's still income to him and he didn't report it but he did take a deduction for the monies he paid to [the county commissioners], which was not a legitimate deduction, again with which the Government is not charging him, but it wasn't a legitimate deduction."

Callanan with false deductions. The court, too, in a special charge given in the midst of the prosecutor's closing argument told the jury that the legality of the payments to the county commissioners and the lawfulness of the deductions were not issues in the case.[4] In view of these circumstances we deem it unlikely that the prosecutor's remarks mislead the jury or produced a wrongful conviction.

We find no grounds for reversal because of other incidents of trial which Callanan claims prejudiced his case. The trial judge carefully considered these matters when he heard Callanan's motion for a new trial. His denial of the motion was proper. The judgment is affirmed.

Affirmed.

4. The court gave the following special charge:

"Ladies and gentlemen of the jury, [the prosecutor] has told you that certain payments made by Mr. Callanan to [the county commissioners] were unlawful.

Whether such payments were or were not unlawful is not in issue in this case.

. . .

There is no issue in this case as to whether any deduction taken by Mr. Callanan on either of the returns was or was not legally taken or was not legitimate or illegitimate.

On the other hand, if in fact you find that Mr. Callanan claimed a deduction for a payment of part of a sum of money allegedly received by him, the fact that he claimed that deduction can be taken into account by you.

Nevertheless, I want to repeat to you —and this was the basis upon which [the defendant's attorney] came to the Bench to object—I want to repeat to you that [the prosecutor] has told you that certain payments made by Mr. Callanan to [the county commissioners] were unlawful.

Whether such payments were or were not unlawful is not in issue in this case, nor is there any issue in this case as to whether any deduction taken by Mr. Callanan on the 1962 return or the 1963 return was or was not legally taken or what or was not legitimate or illegitimate."