**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul F. GARAVAGLIA, Defendant-Appellant.**

No. 77–5115.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1977.

Decided Dec. 16, 1977.

Rehearing and Rehearing En Banc Denied Jan. 24, 1978.

William J. Weinstein, Weinstein, Kroll & Gordon, Detroit, Mich., for defendant-appellant.

Philip M. Van Dam, U. S. Atty., Steven W. Rhodes, Detroit, Mich., Myron C. Baum and James A. Bruton, Gilbert E. Andrews, Wynette Hewett, Tax Division-Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

Paul F. Garavaglia was convicted of attempting to evade income taxes for 1966 and 1967 in violation of 26 U.S.C. § 7201.[1] A jury was waived and the trial judge entered findings of fact and conclusions of law after a trial which lasted ten days. On appeal it is asserted that the evidence at the trial was insufficient to support the district court's conclusion that "the Government has proved each of the essential elements of this offense beyond a reasonable doubt."

Conviction under § 7201 requires proof of three essential elements: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of a tax. *Sansone v. United States*, 380 U.S. 343, 351,

1. § 7201. Attempt to evade or defeat tax

    Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). At trial the defendant admitted that his tax returns understated taxable income by $22,484 for 1966 and $26,366 for 1967. Filing such false returns satisfied the § 7201 requirement of an affirmative act. *Sansone, supra*, at 352, 85 S.Ct. 1004. The existence of significant income tax deficiencies for the two years was conceded. The only issue in the trial court, and on appeal, is whether the government proved beyond a reasonable doubt that defendant willfully understated his income with intent to evade or defeat taxes which were due. Garavaglia contends that the evidence showed that the errors were made by his wife, his attorney and an accountant, and that he took no part in recordkeeping or preparation of the tax returns.

During 1966 and 1967 the defendant operated Paul Garavaglia Trucking as a sole proprietorship in Detroit. Starting with one truck in 1955 he had acquired additional equipment and was operating a substantial business by 1966. The defendant testified that he had a seventh grade education and did not understand bookkeeping or taxes. Mrs. Garavaglia kept the "haul tickets" reflecting payments due from customers and the bills and invoices in paper sacks in the dining room of their home. The haul tickets for each customer were totalled from time to time and duplicate invoices were prepared. When the invoice was paid Mrs. Garavaglia threw away her only copy, though the haul tickets were kept for about one year. There was no regular billing procedure and no regular pay period for the truck drivers who worked for the defendant.

Though the admitted gross receipts of the business exceeded $100,000 in 1966 and $200,000 in 1967, no books were kept. Mrs. Garavaglia testified that she determined gross receipts by adding the year's deposits in the only bank account which she or her husband maintained. The defendant told investigating agents that the receipts of his business were determined from the record of bank deposits. Mrs. Garavaglia testified that she added the monthly totals of deposits from the bank statements and that she furnished the sum of these twelve totals to the preparer. The defendant's wife testified also that she determined the business expenses by adding up all bills and invoices, and contacting certain suppliers. These totals were furnished to an attorney who prepared the 1966 return in a few hours.

Beginning in May or June 1967 an independent accountant was employed to do the bookkeeping at $25.00 per month. Mrs. Garavaglia testified that she took the bank statements and bills to the accountant at the end of each month. Nothing related to customer billing was ever furnished the accountant. The accountant testified that after he had prepared the 1967 return, Mrs. Garavaglia told him that she could prove much larger expenses, particularly for contract labor. He acknowledged that he then increased the total of business deductions without ever being furnished documentation.

The defendant admitted that twenty-two checks which were received during 1966 and 1967 representing payments from customers were never deposited in his bank account, though he endorsed them. He maintained that these checks were used to pay bills of the trucking company, purchase tires, pay for contract hauling and to repay a "loan shark." Since business expenses were computed from bills and invoices as well as cancelled checks, if some bills were paid with third-party checks representing payments from customers, the effect was that defendant received a double deduction—the amount shown on the bill and the undeposited payment. In addition to the undeposited receipts there were significant discrepancies each year between the actual deposits and the amounts reported as gross receipts. These understatements were explained as resulting from failure to list one month's deposit in 1966 and failure to account for entire receipts on various occasions in 1967 where only part of a check

from a customer was deposited and the remainder was taken in cash.

■ Defendant's brief and oral argument in this court presented only the evidence favorable to him. However, there are many conflicts in the evidence and we are required to view it, after conviction, in the light most favorable to the government. The record fully justifies a finding that Paul Garavaglia was much more involved in the finances of his company than his statements to IRS agents and testimony on direct examination might indicate. He received many payments personally and wrote most of the checks which were introduced in evidence. He made out most of the deposit slips including all of those where only part of a payment was deposited and the rest was taken in cash. He computed the pay of the drivers and told Mrs. Garavaglia when to pay bills and purchase invoices. Furthermore, he instructed his wife to destroy invoices to customers after they had been paid, thus virtually precluding any accurate determination of whether all payments were in fact deposited in the bank. The court was not required to accept the innocent explanation which he and Mrs. Garavaglia offered for this irregular practice. This is particularly true when it was shown that all purchase invoices and suppliers' bills were retained and some were listed several times in computing business expenses.

The extensive testimony about loans and their payment is contradictory, and to a great extent, irrelevant. If in fact there were some deposits which represented loan proceeds rather than income, this did not justify defendant's repaying the loans with checks from customers which represented income, but which were never recorded or deposited. The defendant testified that he kept no record of the amounts he borrowed from an alleged "loan shark," and his estimates of the amount varied on different occasions. We conclude that the testimony concerning loan transactions does not negate the inferences which may reasonably be drawn from other evidence in the record.

■ Guilty knowledge and willfulness may reasonably be inferred from such conduct as is revealed by this record. The defendant contended that he relied on his wife, and on his attorney one year and on his accountant the other. Yet in this two-year period he failed to record or deposit twenty-two checks aggregating more than $20,000 paid to his company by customers. Since these receipts did not appear on his bank statements neither defendant's wife nor the preparer knew of their existence. In *United States v. Callanan*, 450 F.2d 145, 148 (4th Cir. 1971), the court wrote that a defendant's "failure to record fees he personally received or to deposit them in his office bank account made it virtually impossible for his accountant to include them in his tax returns." A taxpayer who keeps no regular books but relies on his bank records to reflect his income engages in a deceptive practice when he fails to deposit payments from business customers.

The defendant relies on *McCarty v. United States*, 409 F.2d 793 (10th Cir.), *cert. denied*, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969). Reliance on *McCarty* is misplaced. In that case the court found sufficient evidence to support a guilty verdict. As in the present case there was specific proof of unreported income and preparation of returns by an accountant who did not see any underlying records but relied on information furnished by the taxpayer. The defendant also argues that *United States v. Pechenik*, 236 F.2d 844 (3d Cir. 1956), supports his position. It does so only as an abstract statement of the proposition that good faith reliance upon the conduct of employees who prepare tax information is not a crime. However, *Peckenik* is readily distinguishable from the present case. There the government sought to hold a corporation president criminally liable for a false return of the corporation. The device used by the corporation to understate taxable income consisted of treating capital expenditures as operating expenses. The uncontradicted evidence was that a bookkeeper determined how various expenditures should be treated and there was no evidence

linking the defendant with the erroneous entries. Here the defendant personally failed to record receipts which constituted business income.

The defendant also relies on the decision in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), for the proposition that the government was required to investigate all "leads" supplied to the taxpayer to explain his increased net worth. The case against Garavaglia did employ the net worth method. However, the "leads" which the defendant supplied did not relate to his unexplained increase in net worth, but concerned his explanations of specific identified items of income which were omitted from his returns. The record discloses that leads relevant to unexplained net worth increases which were reasonably susceptible of being checked were investigated.

■ A taxpayer who relies on others to keep his records and prepare his tax returns may not withhold information from those persons relative to taxable events and then escape responsibility for the false tax returns which result. Willfulness may not be inferred from the understatement of income alone. However, when there is evidence of a consistent pattern of underreporting substantial amounts of income together with a failure to record all of the income, an inference of willfulness may be drawn. *Holland v. United States, supra*, 348 U.S. at 139, 75 S.Ct. 127.

The judgment of the district court is affirmed.