828 F.2d 20
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard J. BEDNARIK, Defendant-Appellant.
 No. 86-3486
 United States Court of Appeals, Sixth Circuit.
 September 3, 1987.
 
 Before MILBURN and RYAN, Circuit Judges, and GEORGE CLIFTON EDWARDS, JR., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On January 14, 1986, a federal grand jury charged appellant Richard Bednarik and his ex-wife, Carol Bednarik, with filing false and fraudulent joint income tax returns for the taxable years 1979, 1980, 1981, and 1982. Specifically, the grand jury charged that defendants deducted certain charitable contributions with knowledge that the actual amounts of their charitable contributions were substantially less than that claimed.
 
 
 2
 Prior to trial, Carol Bednarik entered a guilty plea to one count of tax evasion for the taxable year 1982 pursuant to a plea agreement in which Ms. Bednarik agreed to testify against her ex-husband. Trial was held April 1-3, 1986, and on April 4, 1986, the jury returned its verdict, finding defendant guilty on all counts charged.
 
 
 3
 In his pro se appeal, defendant argues (1) that the convictions are not supported by sufficient evidence; (2) that he was the victim of selective prosecution; (3) that the district court impermissibly restricted the testimony of his expert witness; and (4) that he was deprived of his Sixth Amendment right to the effective assistance of counsel. Finding no merit in these arguments, we affirm.
 
 I.
 A. Sufficiency of the Evidence
 
 4
 Our standard of review is set forth in United States v. Steele, 727 F.2d 580 (6th Cir.), cert. denied, 467 U.S. 1209 (1984):
 
 
 5
 It is well-settled that an appellate court considers, after viewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the defendant quilty beyond a reasonable doubt.
 
 
 6
 Id. at 587 (citing Stacy v. Love, 679 F.2d 1209 (6th Cir.), cert. denied, 459 U.S. 1009 (1982)). In so considering the evidence, the reviewing court must find that there is substantial evidence to support the verdict. See United States v. Green, 548 F.2d 1261 (6th Cir. 1977):
 
 
 7
 Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
 
 
 8
 Id. at 1266 (quoting United States v. Martin, 375 F.2d 956, 957 (6th Cir. 1967)).
 
 
 9
 In order to convict an individual under 26 U.S.C. Sec. 7201,[1] the government must establish 'three essential elements: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of a tax.' United States v. Garavaglia, 566 F.2d 1056, 1057 (6th Cir. 1977) (citing Sansone v. United States, 380 U.S. 343, 351 (1965)). There is no doubt that the government produced substantial evidence that defendant's claimed deductions to the Universal Life Church were fraudulent and resulted in a tax deficiency.
 
 
 10
 Ms. Bednarik testified that shortly after Christmas, 1979, defendant brought home from his job as an electrician for General Motors a piece of paper with the name of the Universal Life Church and a telephone number. Defendant told Ms. Bednarik to call the number 'and to tell them that we wanted a charter right away in order that we could claim a donation for the year of 1979.' Joint Appendix at 51. When Ms. Bednarik, a Catholic, expressed reluctance to be involved in another religion, defendant threatened to throw her out of the house if she did not cooperate. Accordingly, the Bednariks mailed $25 to the Universal Life Church in Modesto, California, and obtained a charter. The Bednariks claimed a charitable contribution of $17,000 (approximately one-half of defendant's income) on their 1979 federal income tax return. However, Ms. Bednarik testified that no such contribution was ever made.
 
 
 11
 During the years 1980-1982, a pattern emerged. The Bednariks opened an account, entitled 'Universal Life Church, Charter 33489,' at the bank at which they kept their personal checking account. The sole signatories on the Universal Life Church account were defendant and Ms. Bednarik. Defendant's paycheck would be deposited in the personal account. Ms. Bednarik, acting at defendant's direction, would then write a check on the personal account equal to one-half of defendant's wages, payable to the Universal Life Church, which Ms. Bednarik would deposit in the Universal Life Church account. Simultaneously, she would write a check on the Universal Life Church account, equal to the amount of the deposit just made and payable to 'Reverend Richard J. Bednarik,' which she would then deposit in the Bednariks' personal account. The funds in the Bednariks' personal account were spent on the couple's personal expenses.
 
 
 12
 In 1980, the Bednariks claimed $22,062 in contributions to the Universal Life Church; in 1981, $25,900; and in 1982, $10,000. Ms. Bednarik testified that, in fact, no charitable contributions were made to the Universal Life Church. She further testified that the amounts claimed were arrived at arbitrarily, equaling approximately one-half defendant's salary, the maximum charitable contribution allowed to be claimed at that time.
 
 
 13
 Because the Bednariks never relinquished personal control over the funds deposited in the Universal Life Church account, these deposits cannot be considered charitable contributions. See United States v. Ebner, 782 F.2d 1120, 1123 (2d Cir. 1986). Although the Universal Life Church, Modesto, California, is a tax-exempt organization, to which deductible charitable contributions can be made, Ms. Bednarik testified, and the bank records confirmed, that no funds were sent to that organization. Because the charitable deductions were a sham, the government established tax deficiencies of $4,328 in 1979, $7,843 in 1980, $10,122 in 1981, and $2,011 in 1982. Thus, substantial evidence supports the jury's finding of a tax deficiency as to each count.[2] Moreover, '[f]iling such false returns satisfied the Sec. 7201 requirement of an affirmative act.' Garavaglia, 566 F.2d at 1058 (citing Sansone, 380 U.S. at 352).
 
 
 14
 The 'willfulness' requirement is also satisfied by the above-noted evidence, which shows 'a consistent pattern' of sham banking transactions and the filing of false returns. See Holland v. United States, 348 U.S. 121, 139 (1954). Willfulness could also be inferred from defendant's misleading statements to the IRS agents,[3] as well as his threats to place the blame on his ex-wife if she truthfully reported that no contributions were made to the church. Cf. United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986) (evidence that defendant attempted to threaten a witness is admissible to show consciousness of guilt), cert. denied, 107 S. Ct. 1384 (1987). Accordingly, substantial evidence established that defendant willfully filed fraudulent tax returns 'with intent to evade or defeat taxes which were due.' Garavaglia, 566 F.2d at 1058.
 
 
 15
 Defendant asserts that two circumstances prevent a finding of willfulness. First, defendant argues that, as a minister of the Universal Life Church, he could not be found to have willfully evaded taxes through contributions to the church, which is a tax-exempt organization. However, as noted, the evidence showed that defendant never in fact contributed funds to the Universal Life Church, Modesto, California, the only tax-exempt organization established at trial.
 
 
 16
 Second, defendant argues he relied on H&R Block, which prepared his returns for the 1979, 1980, and 1981 taxable years. '[A] defendant may rebut the Government's proof of willfulness by establishing good faith reliance on a qualified accountant after full disclosure of tax-related information.' United States v. Claiborne, 765 F.2d 784, 798 (9th Cir. 1985), cert. denied, 106 S. Ct. 1636 (1986). See also Garavaglia, 566 F.2d at 1059. In order to prevail, defendant must prove (1) that he provided the preparer full disclosure of tax-related information; (2) that he took no steps to mislead the preparer; and (3) that he filed the return as prepared without having reason to believe it was incorrect. Claiborne, 765 F.2d at 798.
 
 
 17
 The evidence in the present case was sufficient to allow the jury to conclude that defendant signed the returns with knowledge that his claimed contributions to the Universal Life Church were false. Defendant's attempt to influence his ex-wife not to testify truthfully that no contributions were made to the Universal Life Church is alone sufficient evidence from which a reasonable mind might infer that defendant signed his returns with knowledge of their falsity.[4]
 
 B. Selective Prosecution
 
 18
 '[A] defendant asserting selective prosecution . . . bears the heavy burden of establishing, at least prima facie, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights.' United States v. Hazel, 696 F.2d 473, 474 (6th Cir. 1983) (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974)) (emphasis supplied by Hazel court).
 
 
 19
 Defendant appears to assert that he was selected for prosecution because of his religion and the government's desire to prevent him from exercising his constitutional rights as a minister of the Universal Life Church. However, the unprosecuted persons to whom defendant compares himself as similarly situated are other ministers of, and contributors to, the Universal Life Church.[5] However, proof that the government has not proceeded against other members of defendant's religion certainly cannot support a conclusion that the government is discriminating against that religion. In short, defendant has presented no competent evidence to support a claim of selective prosecution.
 
 
 20
 C. Restriction of Testimony of Defendant's Expert
 
 
 21
 Defendant called, as an expert witness, Richard Gardner, a tax specialist with twenty-two years experience. Mr. Gardner was prepared to testify as to how a minister may file an income tax return and how certain benefits that a minister has under tax laws operate. Mr. Gardner was also prepared to testify that the information defendant received from the Universal Life Church regarding taxes (Defendant's Exhibit A) was misleading. The district court initially ruled that Mr. Gardner's testimony in this regard would not be permitted:
 
 
 22
 Given the fact that the defendant did not hold himself out as a minister at the time he filed his return nor is there anything at all in the return to suggest that he was holding himself out as a minister, and given the fact that there is no testimony before the Court to suggest that in construing the evidence in a light most favorable to the defendant that he relied upon Defense Exhibit A for the taking of the contribution to the Universal Life Church as a charitable contribution, the Court will not permit the testimony at this time.
 
 
 23
 Joint Appendix at 106.
 
 
 24
 After defendant testified that he followed the instructions of the Universal Life Church 'explicitly at all times,' defendant again proffered Mr. Gardner to testify 'pertaining to the incorrect and improper tax advice in the Exhibit A.' Joint Appendix at 108. The district court inquired of Mr. Gardner, out of the jury's presence, what in Exhibit A 'would mislead a person into a good faith belief that the procedure of never losing control of the money still represented a basis for a charitable contribution that would be recognized under the laws of the United States?' Joint Appendix at 111-12. Mr. Gardner replied, 'That section is not addressed in here.' Joint Appendix at 112. The district court again ruled that Mr. Gardner's testimony would not be permitted.
 
 
 25
 'The exclusion of evidence on the grounds of relevancy is within the discretion of the trial court.' McLaurin v. Fischer, 768 F.2d 98, 104 (6th Cir. 1985). The district court did not limit defense counsel's examination of Mr. Gardner concerning two meetings he had with defendant in 1983, during which Mr. Gardner advised defendant in connection with the IRS audit of defendant's tax returns.[6] The issue therefore is whether the district court abused its discretion in refusing to permmit Mr. Gardner to testify (1) as to the proper method of preparing a 'minister's return,' and (2) that the information defendant received from the Universal Life Church was misleading.
 
 
 26
 As noted earlier, the proper method of preparing a minister's return is irrelevant to defendant's prosecution for having filed income tax returns claiming nonexistent charitable contributions. Whether or not defendant was entitled to (or thought he was entitled to) any special tax treatment by virtue of his status as a minister simply has no bearing on whether defendant willfully evaded taxes by claiming nonexistent charitable deductions.
 
 
 27
 As to the tax information provided defendant by the Universal Life Church, Mr. Gardner stated that those materials did not address the legality of a person's retaining control over funds and still deducting them as a charitable contribution. Accordingly, defendant could not, in fact, have relied on the information from the Universal Life Church in forming a good faith belief in the legality of his fraudulent charitable contribution scheme. It follows that Mr. Gardner's proffered testimony lacked 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R. Evid. 401. Moreover, as the government argues, the documents spoke for themselves and defendant was free to argue to the jury, in accordance with his testimony at trial, that he had relied on the information (or lack thereof) contained in the Universal Life Church materials in forming his alleged good faith belief.
 
 
 28
 Alternatively, any error by the district court in limiting defendant's evidence in this area would have to be considered harmless beyond a reasonable doubt, in light of the overwhelming proof that defendant willfully claimed nonexistent charitable contributions. See Rose v. Clark, 106 S. Ct. 3101, 3105 (1986) ('an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.') (quoting Delaware v. Van Arsdall, 106 S. Ct. 1431, 1436 (1986)). Finally, any testimony defendant may have wished to present regarding the unsettled or complex nature of the tax laws would clearly have been inadmissible. See United States v. Curtis, 782 F.2d 593, 600 (6th Cir. 1986) ('evidence of the unsettled or complex nature of the law is irrelevant').
 
 D. Ineffective Assistance of Counsel
 
 29
 Defendant's assertions of ineffective trial counsel are without merit. First, defendant argues his trial attorney erred 'in not making the right motions before trial.' The government interprets this (and we can make no better suggestion) as an argument that defense counsel should have moved that the indictment be dismissed on the grounds of selective prosecution. However, the Sixth Amendment does not require an attorney 'to present a baseless defense or to create one that does not exist.' Krist v. Foltz, 804 F.2d 944, 946 (6th Cir. 1986) (citing United States v. Cronic, 466 U.S. 648, 656-57 n.19 (1984)). As explained earlier, this case does not present a viable claim of selective prosecution.
 
 
 30
 Defendant next argues that after the district court limited Mr. Gardner's testimony, his trial attorney 'should have asked for a continuance to get other CPA's in court to verify what my witness was saying was the truth.' The district court did not, of course, limit Mr. Gardner's testimony because it questioned the witness' credibility. Rather, the testimony was excluded as irrelevant. The district court obviously would have made the same ruling as to any other witnesses defense counsel might have called to give similar testimony. Accordingly, defense counsel was not ineffective in failing to engage in the futile gesture of calling 'other CPAs' to verify Mr. Gardner's excluded testimony.
 
 
 31
 Finally, defendant asserts that he asked his trial attorneys 'to bring in some people from my church, they said they would but they didn't bring anyone to the trial to defend me.' To the contrary, defense witnesses included William Edward Miller, a fellow electrician and minister of the Universal Life Church. Defendant's failure to identify particular witnesses counsel should have called and to explain how their testimony would have produced a different result renders his argument in this regard without merit.
 
 II.
 
 32
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Section 7201 provides:
 Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.
 
 
 [2]
 In any event, defendant conceded in his June 23, 1986, informal brief that 'I owe taxes for 1979 to 1982.'
 
 
 [3]
 For example, defendant attempted to substantiate his claims by presenting to the agents the cancelled checks drawn on his personal account payable to the Universal Life Church, charter 33489, without mentioning that that account was solely within his control. Defendant in fact told the agents he had no control over the funds he contributed to the Universal Life Church
 
 
 [4]
 Defendant's claim that H&R Block failed to file the forms appropriate for a 'minister's return' (which concern self-employment deductions and self-employment social security taxes) is irrelevant to the issues presented by the government's prosecution of defendant for claiming false charitable contributions. In essence, defendant appears to be arguing that H&R Block should have assisted him in perpetrating the 'vow of poverty' scheme described in Ebner, 782 F.2d at 1123, rather than the '50% system,' see id., he actually attempted
 
 
 [5]
 For example, in his reply brief, defendant lists 'three other ministers of the church that were not prosecuted as criminals.' Reply Brief (February 11, 1987) at 2
 
 
 [6]
 At the time these meetings transpired, defendant had already filed his 1982 tax return. Accordingly, defendant could make no claim that he relied on Mr. Gardner's advice in filing the tax returns at issue herein