979 F.2d 852
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Sammie G. LUTER and Joy Luter, Defendants-Appellees.
 No. 92-5140.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1992.
 
 Before KENNEDY and MILBURN, Circuit Judges, and POTTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The government appeals the order of the District Court granting defendants' motions for a judgment of acquittal following the jury's guilty verdicts for willfully attempting to evade income tax and aiding and abetting the filing of false corporate tax returns. Because the District Court substituted its judgment for that of the jury, we REVERSE.
 
 I.
 
 2
 In 1968, defendants Joy and Sam Luter moved to Dickson, Tennessee where they owned and operated an Exxon gasoline service station. Sammie Luter handled the physical operation of the station while Joy Luter maintained the station's checkbook. In 1972, the Luters sold the Exxon station and bought an Amoco station. Joy Luter continued to keep the checkbook for the business while her husband operated the station.
 
 
 3
 In 1978, the defendants bought Ingram Oil Company, a distributorship for Gulf Oil Company ("Gulf Oil"), which they operated as a sole proprietorship under the name Luter Oil Company. Joy Luter ran the company office. Prior to the Luter's taking over the operation of the company, Joy Luter had one month of training in keeping the records. In 1982, Luter Oil Company became a jobber for Gulf Oil rather than a distributorship. The significance of this change for the case at issue is that jobbers, unlike distributorships, owned their own equipment and gasoline and were responsible for their own tax work.
 
 
 4
 Thomas Allen was the defendants' accountant and tax advisor until he retired in 1982, at which time his nephew, Kenneth Allen, became the Luters' accountant. In 1983, on the advice of Kenneth Allen, the Luters began operating their jobber business as a corporation rather than as a sole proprietorship. After incorporating, Joy Luter continued to maintain business checking accounts for both the sole proprietorship and the corporation. She also maintained the couple's personal bank accounts. In addition, she kept the daily records of the Luter Oil Company, including accounts receivable cards and entries in a three ring binder. Kenneth Allen maintained the formal books and records of the corporation, which he created based on data provided to him by the defendants.
 
 
 5
 Following the incorporation, the defendants continued to maintain two business checking accounts--the old proprietorship account, from which payment was made using "blue checks," and the corporate account, from which payment was made using "green checks." Kenneth Allen would tell Joy Luter which color check to use when paying out of these accounts. The Luters also had a personal checking account. During the tax years in question, 1984, 1985, 1986, defendants deposited checks that were issued to the corporation into their personal checking accounts, without recording them in the papers submitted to Kenneth Allen or notifying him in any other way that such checks had been received.
 
 
 6
 In 1984, Luter Oil had gross revenues of $11,436,800; in 1985 it had gross revenues of $12,866,956; and in 1986 it had gross revenues of $9,070,702. In addition to the payment of income taxes, the company was required to pay payroll, fuel, unemployment, franchise and excise taxes. In 1984, defendants reported taxable income of $85,827.00 but failed to report additional income of $62,064.16; for 1985, they reported taxable income of $111,941.00 but did not report additional income of $63,636.08; and for 1986, they reported taxable income of $114,391.00 and did not report additional income of $84,532.11. Joint App. at 618. During each of these years, corporate receipts that should have been reflected on the corporate income tax returns as gross receipts were not.
 
 
 7
 In addition, Luter Oil was eligible for fuel tax refunds from sales of fuel to state and federal governments. Joy Luter prepared the state fuel tax form after being instructed by Kenneth Allen, and Allen's office prepared the federal tax refund form. Several fuel tax rebate checks were subsequently deposited by Joy Luter into her personal account rather than the corporate account. Since these tax refunds constituted a reduction of expense, they should have been reflected on the Luter Oil tax returns. Joint App. at 256-57.
 
 
 8
 Luter Oil also received advertising rebates from Gulf Oil. When they operated as a sole proprietorship, these rebates were reflected on "1099" forms sent from Gulf Oil to the Luters. The 1099 forms, which were turned over to the accountant by the Luters, were used for tax purposes to reflect the rebate money received by Luter Oil. However, once incorporated the 1099 forms were no longer received. During the years in issue, Sam Luter cashed several of the rebate checks received from Gulf Oil. The proceeds were used for his personal spending money. He also deposited some of them into the Luters' personal bank account. Mr. Luter did not inform Kenneth Allen of this activity. He testified that he assumed that Allen would pick up these sums from the 1099 form at the end of the year. Because the corporation did not receive these forms, he did not give Allen a 1099 and this money went unreported on the Luters' tax returns.
 
 
 9
 Another reduction of expenses that went unreported was a promissory note issued by Bucksnort Oil to Luter Oil. Joy Luter had discovered that over a nineteen-month period she had failed to charge Bucksnort Oil for fuel tax. On Kenneth Allen's advice, Joy Luter had Bucksnort issue a $55,000 promissory note. The Luters received monthly payments of $2,000 on the note which Joy Luter deposited into her personal bank account. These monthly payments also went unreported on the defendants' tax returns.
 
 
 10
 Both defendants were charged with three counts of willfully attempting to evade income tax for the years 1984, 1985, and 1986, in violation of 26 U.S.C. § 7201. In addition, defendant Sammie Luter was charged with three counts of making and subscribing false corporate returns for the years 1984, 1985, 1986, in violation of 26 U.S.C. § 7206(1); and defendant Joy Luter was charged with two counts of aiding and assisting in the filing of false corporate returns for the years 1984, 1985, 1986, in violation of 26 U.S.C. § 7206(2). Defendants moved for judgments of acquittal at the end of the government's case and again at the end of the evidence. The District Court denied the motions at the end of the government's case and reserved decision on the motions at the end of the evidence. On September 20, 1991, the defendants were convicted on all the counts. On December 31, 1991, the District Court granted defendants' motions for judgment of acquittal, set aside the jury verdicts, and discharged the defendants, concluding that no rational trier of fact could have found the essential element of willfulness beyond a reasonable doubt. This appeal followed.
 
 II.
 
 11
 When confronted with a defendant's motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the test to be applied by a trial court is: "taking the evidence and inferences most favorably to the government, if there is such evidence therefrom to conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury." United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989) (citing Jackson v. Virginia, 443 U.S. 307 (1979); Glasser v. United States, 315 U.S. 60 (1942)). The Supreme Court has observed that the granting of a motion for acquittal "will be confined to cases where the prosecution's failure is clear." Connery, 867 F.2d at 930 (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). The Appellate Court, in reviewing a trial court's decision regarding a Rule 29 motion, applies the same principles to the record it has before it. Connery, 867 F.2d at 930. As this Court noted in Connery, other circuits have indicated the court's use of the same test following a trial court's reversal of a guilty verdict pursuant to Rule 29. See, e.g., United States v. Greer, 850 F.2d 1447, 1450 (11th Cir.1988) (where the jury returns a verdict of guilty and the District Court sets aside that verdict by entering a judgment of acquittal based on the insufficiency of the evidence, the decision of the District Court is entitled to no deference on appeal; the task of the Appellate Court is to decide whether the evidence, in a light most favorable to the government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt).
 
 
 12
 The District Court found that even when taken in a light most favorable to the government, the evidence in the case illustrates ignorance, not willfulness, on the part of the defendants, and quite possibly incompetence on the part of their accountant. We find that the District Court erred in substituting its judgment for that of the jury.
 
 
 13
 First, the District Court inferred that the defendants did not understand the ramifications of incorporation, and the resultant changes involved in accounting requirements. The District Judge based this decision in part on Kenneth Allen's testimony that although it was his usual practice to discuss the ramifications of incorporation with his clients, he could not specifically recall having had such a conversation with the Luters. While Allen was unable to testify as to a specific date that he might have talked with defendants, he did say "I always have that conversation with anyone that incorporates. It's that important." Joint App. at 159. Moreover, Allen testified that in 1982, prior to their becoming a corporation, he had discussed with the Luters the necessity of depositing receipts that were due to the proprietorship into the proprietorship bank account. Joint App. at 62.
 
 
 14
 In addition, Kenneth Allen testified that when the Luters opened the business as a corporation he advised them that the corporation should have its own bank account--separate from the other accounts. Joint App. at 66. He also testified that he would advise the Luters to deposit checks payable to the corporation into the corporate bank account, that he would generally not advise clients to deposit such checks into a personal account, and that he would have required some record of such deposits had he known about them. Joint App. at 69-70. Similarly, the Luters' first accountant, Thomas Allen, testified that although he could not remember any specific conversations, he was sure that he would have insisted that deposits of receipts made payable to the business be deposited into the business account. Joint App. at 253. In contradiction, Joy Luter testified that no one ever told her not to put checks made out to the corporation into her personal account. Joint App. at 350. Issues of witness credibility, however, are strictly for the jury to determine. United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989). Therefore, viewing the evidence in the light most favorable to the government, there was ample evidence for the jury to find that the Luters were informed of and understood the ramifications of incorporating--at least to the extent that corporate receipts should be deposited into the corporate bank account.
 
 
 15
 The District Court further found that Joy Luter could not distinguish between the two business checking accounts and the Luters' personal checking accounts, and the importance of keeping them separate. Mrs. Luter testified that she believed all the money was theirs, as was the case when the company was a proprietorship, and that it should not matter which account was used. Joint App. at 345. However, Joy Luter also testified that she never told Kenneth Allen she was depositing checks payable to the corporation into her personal account; she testified she never sent him any adding machine tapes concerning corporate receipts that went into her personal account; and she testified that she never sent Allen any Xerox copies of these checks. Joint App. at 370. In United States v. Garavaglia, 566 F.2d 1056 (6th Cir.1977), this Court found that "a defendant's 'failure to record fees he personally received or to deposit them in his office bank account made it virtually impossible for his accountant to include them in his tax returns.' " Id. at 1059 (quoting United States v. Callanan, 450 F.2d 145, 148 (4th Cir.1971)). The Court went on to say that, "[a] taxpayer who keeps no regular books but relies on his bank records to reflect his income engages in a deceptive practice when he fails to deposit payments from business customers." Id. The jury heard evidence that Joy Luter paid the company bills and kept track of the accounts receivable for over twenty years. They heard testimony that in addition to the two business accounts, the Luters maintained separate personal accounts. Viewing the evidence in the light most favorable to the government, the jury could have found that, despite her confusion regarding business accounts, Joy Luter still knew that business receipts should go into a business account rather than a personal one. Or, in the alternative, even assuming Mrs. Luter thought business receipts could properly be deposited into a personal account, there was sufficient evidence for the jury to find that she deliberately failed to inform her accountant of such deposits. Similarly, the jury could find that Mr. Luter deliberately failed to inform Allen of the rebate checks he cashed. Mr. Luter would tell Allen orally the amount of advertising expense.
 
 
 16
 In granting the defendants' motions for acquittal, the District Court also found that Joy Luter relied extensively on Kenneth Allen for his accounting and tax expertise. The judge emphasized that, despite the substantial amount of gross revenues generated by Luter Oil and the relative unsophistication of the Luters, Kenneth Allen never sat down with the Luters and asked them the sources of their income, which accounts the income should go (or was going) into, or whether they had accounted for all their income for tax purposes. Joint App. at 53. As the judge himself pointed out, it was not customary for Allen to review the Luters' personal bank account in order to track all their income. Allen testified that he was not engaged to review defendants' personal bank records, that there was no accounting reason for such a review, and that defendants never requested him to do so. Joint App. at 109-10. Similarly, both Joy Luter and Kenneth Allen testified that Mrs. Luter sent Allen the records he needed to prepare the Luters' taxes and that she also often sent him records he didn't need. Joint App. at 214-15, 319. Allen testified, however, that he only "sometimes" received defendants' personal bank statements in the course of his work. His usual practice (when preparing defendants' net worth statements) was to ask Mrs. Luter for the balance in the personal accounts, rather than review actual bank records. Joint App. at 466-67. Those bank statements would not disclose the source of the deposits. As to Allen's failure to inquire about the deposits of the corporate receipts into the Luters' personal account and the Luters' failure to provide this information, the District Court instructed the jury as follows:
 
 
 17
 If you find from all of the evidence that the defendants ... had a good faith belief that they supplied to their accountant all of the information necessary for the preparation of the 1984 and 1985 and 1986 personal tax returns, and for the preparation of their 1984, 1985 and 1986 corporate tax returns, then the defendants cannot be found guilty of the willful evasion of personal income taxes, the willful filing of false corporate income tax returns, or willfully aiding in the preparation of a false corporate income tax return.
 
 
 18
 Joint App. at 457. There is relevant evidence from which the jury could find, beyond a reasonable doubt, that the defendants did not have a good faith belief that they supplied their accountant with all the necessary information; i.e., they deliberately failed to provide him with a record of substantial monies paid to the corporation.
 
 Similarly, this Court has stated that:
 
 19
 A taxpayer who relies on others to keep his records and prepare his tax returns may not withhold information from those persons relative to taxable events and then escape responsibility for the false tax returns which result. Willfulness may not be inferred from the understatement of income alone. However, when there is evidence of a consistent pattern of underreporting substantial amounts of income together with a failure to record all of the income, an inference of willfulness may be drawn.
 
 
 20
 United States v. DeClue, 899 F.2d 1465, 1472 (6th Cir.1990) (quoting, Garavaglia, 566 F.2d at 1060). While the unreported income may not appear large relative to the Luter Oil Company's gross revenues, the unreported amounts are significant when compared with the taxable income reported on the Luters' individual and corporate returns. To reiterate, on their individual returns, defendants reported taxable income of $85,827.00 but failed to report additional income of $62,064.16 for 1984; in 1985, they reported taxable income of $111,941.00 but failed to report additional income of $63,636.06; and, in 1986, they reported taxable income of $114,391.00 but failed to report additional income of $84,532.11. Appellant's brief at 18; Joint App. at 618. On their corporate returns, defendants reported taxable income of $118,156.00 but failed to report additional income and reduce expenses by $62,064.16 for 1984; in 1985, they reported taxable income of $150,603.00 but failed to report additional income and reduce expenses by $65,053.08; and, in 1986, they reported taxable income of $445,902.00 but failed to report additional income and reduce expenses by $84,532.11. Appellant's brief at 18; Joint App. at 619. Viewing this evidence in the light most favorable to the government, it was sufficient for the jury to have inferred willfulness.
 
 
 21
 In addition, the District Court found that although accounting for fuel tax refunds was a complicated procedure, Kenneth Allen never asked the Luters into which account they were depositing these fuel tax refunds. Kenneth Allen had instructed Joy Luter, in her capacity as "bookkeeper" for the Luter Oil Company, on how to fill out the state tax refund claim form; Allen testified that the claim for refund is a claim on behalf of the business, as opposed to the individual; and Allen testified that he would have instructed Joy Luter to deposit such checks into the business account. The jury could rationally find that Joy Luter would have known that where she was depositing these refund checks was pertinent and material for disclosure to the preparer of her income tax return.
 
 
 22
 The District Court further concluded that defendants' failure to report advertising rebates was due to their assumption that such payments would be reflected on the 1099 forms as well as to Allen's failure to discuss with Joy Luter the proper way to account for the rebates. There was evidence, however, that Kenneth Allen did tell Joy Luter what to do with these checks. Allen had sent the Luters a memorandum advising them to set up a computer account number for miscellaneous income, and that any rebates received from Gulf Oil should be recorded in this account. The memo further provided that entries to the account should be dated and supported by documents, then bound together with an adding machine tape and kept with the daily tickets. Joint App. at 145. The jury could reasonably infer that this memo adequately informed Joy Luter that rebate checks did not belong in her personal account; and, that by depositing them into her account and failing to inform her accountant of such, she willfully evaded her taxes.
 
 
 23
 Furthermore, Allen also testified that the Luters would receive the 1099s and then send them on to him. Joint App. at 184. Mr. Luter testified that he cashed the rebate checks because he assumed these checks would be reflected on the 1099s at the end of the year.[1] Joint App. at 419. There was sufficient evidence for the jury to find that Mr. Luter knew that the Luters were no longer receiving 1099s and that if he did not advise his accountant of the receipt of the rebates, these advertising rebates would go unreported. The 1099s had been sent to the Luters, not the accountant. Similarly, the record indicates that Sammie Luter represented to Allen that his net monthly advertising expense was $1,400 when, in fact, the $700 monthly rebate from Gulf Oil reduced this expense to $700. Joint App. at 132. Thus, a rational jury could have found the element of willfulness, because at the very least, the Luters knew they were receiving a rebate, and this rebate represented a reduction in expense and had to be reflected for tax purposes.
 
 
 24
 Finally, the District Court found that the Luters' failure to report monthly payments of $2,000 from Bucksnort Oil on a $55,000 promissory note was also due to Joy Luter's lack of sophistication and to Kenneth Allen's negligence. The note was issued because Joy Luter had failed to charge Bucksnort for fuel taxes on purchases over a nineteen-month period. Again, Joy Luter deposited the note payments into her personal bank account. Kenneth Allen was the one who told her to execute the note, but he testified that he was not aware that Luter Oil had actually obtained a note or that payments were being made. Joy Luter testified that she recorded the Bucksnort payments in a "yellow book" and supplied copies of pages from that book to Kenneth Allen. Joint App. at 329-30. Again, it was for the jury to decide whom to believe. Even if Allen had failed to have adequate accounting practices in place, this does not preclude the jury from finding that the Luters were sophisticated enough to know that they had to pay taxes on this income and that they deliberately kept this information from their accountant.
 
 III.
 
 25
 The District Court emphasized the defendants' reliance on their accountant, as well as Joy Luter's limited education and training, in concluding that the record was more reflective of Kenneth Allen's inexperience and incompetence (of the "blind leading the blind"), than of any willful criminal conduct on the part of the Luters. However, the Luters were sophisticated enough to run a business generating millions of dollars in gross revenues; Joy Luter was sophisticated enough to keep the books for that business; she was sophisticated enough to prepare the state tax refund forms; both defendants were sophisticated enough to take part in Gulf Oil's co-op advertising program; Joy Luter was sophisticated enough to realize she had failed to charge to Bucksnort Oil sales tax for nineteen-months; and both defendants were sophisticated enough to execute a promissory note with Bucksnort. The record is replete with testimony that the defendants relied completely on their accountant. However, for three years the defendants deposited (and cashed) a number of corporate receipts into their personal bank accounts without recording those payments or even informing their accountant of this activity. The evidence of defendants' repeated failure to notify Kenneth Allen of these deposits, or to report this income on their tax returns warranted the jury's finding that the defendants willfully evaded their taxes and filed false tax returns for 1984, 1985 and 1986. The District Court's grant of defendants' motions for judgment of acquittal was incorrect. We REVERSE.
 
 
 
 *
 The Honorable John W. Potter, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 In DeClue, 899 F.2d at 1472, DeClue's accountants calculated gross receipts for the corporation based on bank deposits. However, DeClue constantly took commission checks from the insurance companies and cashed them at grocery stores and other businesses or put them in his personal checking account. This Court found that DeClue's allegation that he photocopied the checks and took the copies to his accountant was unsupported by the accountants' testimony and that the record contained ample evidence of willfulness. In the case at issue, it is undisputed that the defendants failed to inform Kenneth Allen that Sammie Luter was depositing or cashing rebate checks for his personal use