T.C. Memo. 2000-336


UNITED STATES TAX COURT



REBECCA WRIGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRIAN W. WRIGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 19878-98, 19879-98.        Filed November 1, 2000.


<u>Judy E. Hamilton</u>, for petitioners.

<u>Christine V. Olsen</u> and <u>Timothy F. Salel</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


WELLS, <u>Chief Judge</u>:  In these consolidated cases, respondent determined the following deficiencies:  $5,656, $59,908, and $11,208, respectively, for taxable years 1992 through 1994. Respondent also determined that Brian Wright (petitioner) is

liable for the fraud penalty, pursuant to section 6663,[1] for taxable years 1992 through 1994, in the amounts of $4,242, $44,931, and $8,406, respectively. Alternatively, respondent determined that petitioners are liable for an accuracy-related penalty, pursuant to section 6662(a), for the taxable years 1992 through 1994, in the amounts of $1,131, $11,982, and $2,242, respectively. Petitioners concede the additional income determined by respondent in the notice of deficiency and present only the following issues for us to address: (1) Whether petitioner is liable for the fraud penalty pursuant to section 6663 for 1992, 1993, and 1994; and (2) if the fraud penalty is not applicable, whether petitioners are liable for the accuracy-related penalty pursuant to section 6662(a) for 1992, 1993, and 1994.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated herein by reference and are found as facts in the instant cases. Petitioners resided in California at the time they filed their petitions in the instant cases.

---

[1]    Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners were married, and filed joint tax returns, during 1992, 1993, and 1994. During those years, petitioner was a certified financial planner. Petitioner earned a B.S. degree in business administration from Regis College. After college, petitioner took numerous accounting and tax classes.[2]

Petitioner was the defendant in the criminal case of United States v. Brian Wright, Criminal Case No. 96-1670-H, in the U.S. District Court for the Southern District of California. On March 13, 1997, after a 1-week jury trial, petitioner was found guilty of 1 count of bank fraud in violation of 18 U.S.C. secs. 1344 and 2, 27 counts of embezzlement by a bank employee in violation of 18 U.S.C. sec. 656, 1 count of money laundering in violation of 18 U.S.C. secs. 1957 and 2, and 3 counts of filing false tax

---

[2] Among the classes that petitioner took were:

| Year | Class | Hours |
|---|---|---|
| 1988 | Corporate Tax II | 45 |
| | Advanced Accounting | 45 |
| | Audit | 45 |
| | Practice | 48 |
| | Audit | 48 |
| | Theory | 48 |
| | Law | 48 |
| 1991 | CPA Exam: Practice I | 15 |
| | CPA Exam: Practice II | 15 |
| | CPA Exam: Theory | 15 |
| | CA State Income Tax | 1 |
| | Trust Law & Estate Planning | 1 |
| | Investment & Inheritance | 1 |
| 1993 | Chartered Financial Analyst I | 60 |

returns (for the taxable years 1992, 1993, and 1994) in violation of section 7206(1).

Petitioner's conviction on the foregoing counts stemmed from his involvement with trusts established for the benefit of Arleen Millyard. During November 1978, Mrs. Millyard's husband established a trust at Security Pacific National Bank because of her alcoholism and lack of understanding of basic financial issues. The trust was meant to ensure the physical and financial well-being of Mrs. Millyard in the event of her husband's demise. During 1991, petitioner became a trust officer for Security Pacific National Bank, which later merged into Bank of America. Petitioner was the trust officer for the Millyard trust.

Bank of America has a written policy and internal rules of conduct that expressly prohibit its trust officers from accepting cash or gratuities from its customers. Petitioner was provided a copy of those rules and signed a statement acknowledging reviewing those rules at the time of his employment. Each year, Bank of America requires its employees to certify their awareness of the bank's policies, including the prohibition against receiving money from trust clients. Each year petitioner signed a statement that he had read the bank's policies. At trial, petitioner acknowledged that he was aware that he might lose his

job if the bank learned that he was taking money from a trust client.

Mrs. Millyard kept a checking account at Bank of America. When a trust client sought to remove money from a trust account, the client would be asked to complete a "Request for Transfer" form. Petitioner authorized numerous transfers from the trust to Mrs. Millyard's checking account. Mrs. Millyard wrote many checks for the benefit of petitioners, which were deposited into their accounts.

Petitioner knew that checks in excess of $10,000 would have been noticed and investigated by Bank of America. Petitioner also knew that if any of the checks were made out directly to him, he would lose his job. Checks in amounts less than $10,000 would not appear on the bank's large item report. All of the checks written by Mrs. Millyard for the benefit of petitioners were under $10,000. Mrs. Millyard, on occasion, would write several checks to petitioners over a short period of time. While each check was less that $10,000, the total amount transferred to petitioners over such a period was substantially more than $10,000. On three occasions, Mrs. Millyard wrote multiple checks on the same day, the total of which exceeded $10,000; however,

each individual check was in an amount below the detection

threshold of $10,000.[3]

---

[3]     Throughout his embezzlement activity, petitioner caused Mrs.
Millyard to write numerous checks to him, to his investment and
bank accounts, and to petitioner Rebecca Wright.  Most of the
checks were written to petitioners' bank or investment accounts.
During 1992, 1993, and 1994 petitioners received the following
amounts from Mrs. Millyard:

| Date | Check No. | Payee | Amount |
|------|-----------|-------|--------|
| 10/14/92 | 1042 | Rebecca Wright | $9,000 |
| 11/3/92 | 1201 | San Diego County CU | 7,800 |
| 12/4/92 | 1282 | San Diego County CU | 2,000 |
| 12/23/92 | 1389 | Brian Wright | 1,000 |
| 1/21/93 | 1318 | San Diego County CU | 7,500 |
| 1/21/93 | 1319 | Brian Wright | 2,500 |
| 2/26/93 | 1356 | San Diego County CU | 1,000 |
| 4/5/93 | 1407 | Charles Schwab, Inc. | 8,500 |
| 4/16/93 | 1406 | Charles Schwab, Inc. | 8,500 |
| 4/24/93 | 1410 | Charles Schwab, Inc. | 7,500 |
| 4/30/93 | 1408 | Charles Schwab, Inc. | 5,500 |
| 5/5/93 | 1446 | 20th Century Fund | 9,000 |
| 5/15/93 | 1447 | Charles Schwab, Inc. | 9,000 |
| 5/18/93 | 1450 | 20th Century Fund | 8,500 |
| 5/28/93 | 1451 | Charles Schwab, Inc. | 8,500 |
| 5/28/93 | 1452 | 20th Century Fund | 8,500 |
| 6/9/93 | 1454 | Charles Schwab, Inc. | 8,500 |
| 7/3/93 | 1499 | 20th Century Fund | 8,500 |
| 7/6/93 | 1495 | Rohr Credit Union | 9,500 |
| 7/26/93 | 1497 | Rohr Credit Union | 8,500 |
| 8/2/93 | 1564 | San Diego County CU | 8,500 |
| 9/12/93 | 1565 | San Diego County CU | 7,500 |
| 9/27/93 | 1498 | Charles Schwab, Inc. | 8,500 |
| 9/30/93 | 1487 | Charles Schwab, Inc. | 8,500 |
| 9/30/93 | 1599 | San Diego County CU | 1,000 |
| 11/10/93 | 1486 | Charles Schwab, Inc. | 8,500 |
| 12/10/93 | 1655 | San Diego County CU | 7,500 |
| 3/12/94 | 1337 | Rebecca Wright | 9,500 |
| 3/26/94 | 1738 | Rebecca Wright | 8,500 |
| 4/15/94 | 1716 | Rebecca Wright | 200 |
| 6/14/94 | 1739 | Brian Wright | 9,500 |
| 7/19/94 | 1740 | Brian Wright | 8,500 |

(continued...)

Each year, Bank of America conducted a review of its trust accounts. Petitioner prepared the reports for Mrs. Millyard's trust accounts. One item on the report is the total amount withdrawn or distributed from the trust during a given year. On the report for the period April 1993 through April 1994, petitioner falsely reported the amount transferred from Mrs. Millyard's trust. During the period April 1993 through April 1994, Mrs. Millyard withdrew substantial amounts from her trusts, e.g., $23,500 on May 5, 1993, $35,000 on July 1, 1993, $10,000 on November 10, 1993, and $23,500 on February 2, 1994. Petitioner reported that Mrs. Millyard withdrew only $23,500 from the trust. Bank of America would have been concerned had it seen that approximately $100,000 had been taken from the trust. Another item on the annual trust report inquired whether the trust officer faced any potential conflict of interest or legal noncompliance. Petitioner wrote "non-applicable" on the report, but he knew that accepting money from Mrs. Millyard presented a potential conflict of interest.

Petitioner knowingly engaged in a scheme to obtain money from a federally insured bank by making false statements or

---

(...continued)
| 8/4/94 | 1765 | Rebecca Wright | 1,000 |
| 9/21/94 | 1996 | Rebecca Wright | 1,000 |

promises. Petitioner embezzled funds of the bank and acted with intent to injure or defraud the bank. Petitioner engaged in monetary transactions using money he knew was obtained through criminal activity. Petitioner's 1992, 1993, and 1994 tax returns were false as to a material matter. Petitioner did not believe his tax returns for 1992, 1993, and 1994 to be true and correct as to every material matter and willfully subscribed to the false returns with the intent to violate the law. Petitioner knew that the funds he embezzled were not gifts.

Petitioner Rebecca Wright prepared petitioners' Federal income tax return for 1992. She made no inquiry into whether the funds received from Mrs. Millyard were taxable income. On their income tax return for 1992, petitioners reported adjusted gross income of $67,927.95. For 1992, petitioners' actual adjusted gross income was $87,727.95. For 1992, petitioners omitted embezzlement income of $19,800. For the years 1993 and 1994, petitioners' returns were prepared by Carolyn Witt, C.P.A. On their 1993 Federal income tax return, petitioners reported adjusted gross income of $97,984. For 1993, petitioners' actual adjusted gross income was $267,484. For 1993, petitioners omitted embezzlement income of $169,500. On their Federal income tax return for 1994, petitioners reported adjusted gross income of $97,984. For 1994, petitioners' actual adjusted gross income

was $136,184.  Petitioners omitted embezzlement income of $38,200

from their 1994 return.  Petitioners did not inform Ms. Witt

about any of the embezzlement income.

## OPINION

We must decide whether petitioner is liable for the fraud

penalty pursuant to section 6663 for taxable years 1992, 1993,

and 1994.  Section 6663 provides:

SEC. 6663.  IMPOSITION OF FRAUD PENALTY.

(a)  Imposition of Penalty.--If any part of any
underpayment of tax required to be shown on a return is
due to fraud, there shall be added to the tax an amount
equal to 75 percent of the portion of the underpayment
which is attributable to fraud.

(b)  Determination of Portion Attributable to
Fraud.--If the Secretary establishes that any portion
of an underpayment is attributable to fraud, the entire
underpayment shall be treated as attributable to fraud,
except with respect to any portion of the underpayment
which the taxpayer establishes (by a preponderance of
the evidence) is not attributable to fraud.

(c)  Special Rule for Joint Returns.--In the case
of joint return, this section shall not apply with
respect to a spouse unless some part of the
underpayment is due to fraud of such spouse.

The burden of proof in respect of the issue of fraud must be

carried by the Commissioner by clear and convincing evidence.

See sec. 7454(a); Rule 142(b).  To establish the existence of

fraud, respondent must prove by clear and convincing evidence

that petitioner underpaid his income tax and that some part of

the underpayment was due to fraud.  See <u>Clayton v. Commissioner</u>, 102 T.C. 632, 646 (1994); <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 909 (1988).

Fraud is established by proving that a taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.  The Commissioner need not establish that tax evasion was a primary motive of the taxpayer but may satisfy the burden by showing that a tax-evasion motive played any part in the taxpayer's conduct, including conduct designed to conceal another crime.  See <u>Clayton v. Commissioner</u>, <u>supra</u> at 647; <u>Recklitis v. Commissioner</u>, <u>supra</u> at 909.

Fraudulent intent may be established by circumstantial evidence and reasonable inferences drawn from the record.  See <u>Clayton v. Commissioner</u>, <u>supra</u> at 647.  In <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the U.S. Court of Appeals for the Ninth Circuit articulated a nonexclusive list of factors which demonstrate fraudulent intent.  These "badges of fraud" include:  (1) Understating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) giving implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with tax authorities; (7) engaging in

illegal activities; (8) attempting to conceal illegal activities; (9) dealing in cash; and (10) failing to make estimated tax payments. While no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence. See Bradford v. Commissioner, supra at 303.

Many of the foregoing badges of fraud are present. Petitioner's substantial understatement of income tax from the omission of the embezzlement income in 1992, 1993, and 1994 is a badge of fraud. As conclusively established in the criminal case, petitioner knew that the funds he received from Mrs. Millyard were not gifts. Petitioners have stipulated that petitioner received embezzlement income. Moreover, petitioners stipulated that they did not report this embezzlement income on their tax returns. Petitioner understated his income in the years in issue by 36 percent, 24 percent, and 60 percent, respectively. Such a pattern of substantial discrepancies between petitioner's actual income and reported income constitutes evidence of intent to defraud. See Kohrs v. Commissioner, T.C. Memo. 1985-115.

Failure to keep records is another badge of fraud. See Truesdell v. Commissioner, 89 T.C. 1280, 1302 (1987). Petitioner did not keep any records of the amounts he embezzled.

The illegal nature of petitioner's activities and his concealment of these illegal activities are additional badges of fraud. See United States v. Palmer, 809 F.2d 1504, 1505-1506 (11th Cir. 1987); Davis v. Commissioner, T.C. Memo. 1991-333 (embezzler who issued checks for less than $10,000 in order to avoid detection liable for fraud penalty). Petitioner went to great lengths to conceal his embezzlement activities. In order to hide his theft, petitioner caused Mrs. Millyard to write checks to accounts controlled by him or his wife in amounts less than $10,000. On three occasions he caused Mrs. Millyard to write on 1 day several checks for his benefit that totaled over $10,000. During the period April 1993 through April 1994, Mrs. Millyard withdrew substantial amounts from her trust. On the report to the bank, petitioner reported that Mrs. Millyard withdrew merely $23,500 from the trust. The bank would have been concerned had it seen that approximately $100,000 had been taken from the trust. By incorrectly reporting the amounts withdrawn from the trust, petitioner attempted to conceal his embezzlement activities.

Petitioner's receipt of embezzlement income by defrauding an elderly client of her funds was the underpinning of virtually every count in the indictment against him, including bank fraud, money laundering, embezzlement, and the filing of false income

tax returns. There is no question that petitioner sought to conceal his receipt of Mrs. Millyard's money because of the illegal nature of his activities. He knew that the receipt of the funds violated numerous banking and criminal provisions. The likelihood that petitioner also had the intent to conceal his illegal activities to avoid being charged with the nontax crimes does not negate his intent to evade tax. See Clayton v. Commissioner, supra at 647-648 (Commissioner need not establish that tax evasion was the primary motive; it is enough to demonstrate that tax evasion played a role in the taxpayer's conduct).

The fact that petitioner concealed his receipt of the funds from illegal activities from his accountant and return preparer, Ms. Witt, is relevant to the issue of fraud. See Duffey v. Commissioner, 91 T.C. 81 (1988); Langworthy v. Commissioner, T.C. Memo. 1998-218 (taxpayer's failure to be forthcoming with his return preparer was evidence of fraud). A taxpayer who relies on others to keep his records and prepare his tax returns may not withhold information from those persons relative to taxable events and then escape criminal responsibility for the resulting false returns. See United States v. O'Keefe, 825 F.2d 314, 318 (11th Cir. 1987); United States v. Garavaglia, 566 F.2d 1056 (6th Cir. 1977). In preparing petitioners' income tax returns for

1993 and 1994, Ms. Witt relied on the information provided by petitioners to prepare those returns.

The sophistication, education, and intelligence of the taxpayer are relevant considerations in determining whether a taxpayer has fraudulent intent.  See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331(6th Cir. 1984); Iley v. Commissioner, 19 T.C. 631, 635 (1952).  Petitioner was a bank trust officer with a background in accounting.  As a bank trust officer with a degree in business administration as well as extensive training in accounting, petitioner was "not a person who could fail to understand what the law requires for him under the circumstances."  Halle v. Commissioner, 7 T.C. 245, 250 (1946), affd. 175 F.2d 500 (2d Cir. 1949).  Given petitioner's education and work experience, "it asks too much" for the Court to "believe that petitioner had no idea his embezzlement income was taxable."  Myers v. Commissioner, T.C. Memo. 1980-262 (bank trust officer must have known embezzled funds were taxable income).  Petitioner had the sophistication to know that he was required to report the funds he received from Mrs. Millyard on his return.

Petitioner's criminal convictions raise a strong inference that petitioner possessed the willfulness necessary to satisfy

the intent element.  See <u>Wilson v. Commissioner</u>, T.C. Memo. 1994-454.  Indeed, in <u>McGee v. Commissioner</u>, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), we stated:

> it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to misrepresent and conceal his receipt of those same funds from the Government with the intent to evade tax.

Petitioner was convicted of embezzlement in violation of 18 U.S.C. sec. 656, money laundering in violation of 18 U.S.C. sec. 1957, and filing false returns for the years 1992 through 1994 in violation of section 7206(1).[4]  Convictions for such crimes are highly probative of petitioner's intent to evade taxes because the activities involve perjury, deceit, breach of fiduciary duty, and concealment of criminal proceeds.  See <u>Williams v. Commissioner</u>, T.C. Memo. 1992-153.  On the basis of the foregoing, we sustain respondent's determination of the fraud penalty against petitioner for each year in issue.  Consistent with our holding on this point, we need not consider respondent's alternative determination that petitioners are liable for accuracy-related penalties for the years in issue.

---

[4]    See <u>Wilson v. Commissioner</u>, T.C. Memo. 1994-454 (declaring that convictions under sec. 7206 are highly persuasive evidence of intent to evade taxes); <u>Estate of Sawczak v. Commissioner</u>, T.C. Memo. 1993-210 (same).

To reflect the foregoing,

Decisions will be entered

pursuant to Rule 155.