**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4523

SALIH M. ZAMZAM,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-96-44-A)

Argued: January 29, 1999

Decided: June 4, 1999

Before WIDENER, MURNAGHAN, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Ray Baldwin, III, HIRSCHLER, FLEISCHER,
WEINBERG, COX & ALLEN, Richmond, Virginia, for Appellant.
Rick A. Mountcastle, Assistant United States Attorney, Abingdon,
Virginia, for Appellee. **ON BRIEF:** Carl E. McAfee, MCAFEE,
BLEDSOE & ASSOCIATES, P.C., Norton, Virginia, for Appellant.
Robert P. Crouch, Jr., United States Attorney, Abingdon, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. Salih Zamzam, M.D., (Dr. Zamzam) challenges the sufficiency of the evidence to support the willfulness element of his convictions on five counts of willfully evading and defeating payment of individual federal income taxes, see 26 U.S.C.§ 7201, and three counts of willfully making and subscribing under the penalties of perjury materially false federal income tax returns for his incorporated medical practice, see 26 U.S.C § 7206(1). Dr. Zamzam also makes two evidentiary challenges. For reasons that follow, we affirm all of Dr. Zamzam's convictions.

I.

Viewing the evidence at trial in the light most favorable to the government, as we must when reviewing a defendant's challenge to the sufficiency of the evidence to support his convictions, see United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996), the following facts are established. At all times relevant to this appeal, Dr. Zamzam was a general medical practitioner and general surgeon in Grundy, Virginia. He practiced medicine through his incorporated medical practice (the Corporation). Dr. Zamzam was the sole shareholder of the Corporation and a corporate employee.

Dr. Zamzam's wife, Mariam Zamzam (Mrs. Zamzam), was also an employee of the Corporation. Although she held a nursing degree, she functioned as the Corporation's office manager. As the office manager, she made the majority of the entries in the Corporation's daily receipts journal and the majority of the deposits into the Corporation's operating account at Grundy National Bank (the Corporate Account). However, Dr. Zamzam himself made some of the entries into the daily receipts journal and some of the deposits into the Corporate Account.

Kermit Fuller (Fuller) served as the Corporation and the Zamzams' personal accountant and income tax return preparer. As the Corpora-

2

tion's accountant, Fuller, aided by his staff, prepared the Corporation's payroll, the requisite W-2 forms, and the year-end balance sheets based upon information provided by the Zamzams.

In late 1992 or early 1993, the United States Internal Revenue Service (IRS) assigned IRS Agent Steve Baker (Agent Baker) to audit the Corporation's federal income tax return for the year 1991. In early 1993, Agent Baker also began an audit of the Zamzams' joint individual federal income tax return for 1989. This audit was later expanded to include their individual federal income tax returns for the years 1990 and 1991.

The audits and a later criminal investigation revealed that, during the course of the calendar years 1990, 1991, 1992, 1993, and 1994, a total of $668,569 of the Corporation's gross income had been withheld from deposit into the Corporate Account and diverted into the Zamzams' personal money market account at Grundy National Bank (the PMM Account). This total amount had been withheld by diverting small amounts on over 1200 separate occasions. The audits additionally revealed that, during the same years, $32,113 in rental payments made to the Corporation by Tri-City Opticians and Dr. Charles Owens had been withheld from deposit into the Corporate Account and diverted into the PMM Account. The diversion scheme avoided any record of the diverted corporate income in the daily receipts journal and the Corporation's bank statements. Furthermore, neither the Corporation's federal income tax returns for the years 1990, 1991, 1992, 1993, and 1994, nor the Zamzams' joint individual federal income tax returns for the same years disclosed as income any of the diverted corporate income.

The record established that the Zamzams took many steps to conceal their diversion scheme from the IRS. On July 10, 1991, Dr. and Mrs. Zamzam transferred $1,100,000 from their personal checking account at Grundy National Bank (the PC Account) to a foreign bank account by writing a check on the PC Account in the amount of $1,100,000 made payable to the British Bank of the Middle East. The PC Account was funded with money from the PMM Account. Also, during 1990 and 1991, Mrs. Zamzam transferred a total of $800,000 from the PC Account to several foreign banks ($100,000 to the Swiss Bank Corporation on July 23, 1990; $300,000 to the Union Bank of Switzerland on July 25, 1990; and $400,000 to the British Bank of the

3

Middle East on November 18, 1991) by the same method. The evidence established that this arrangement resulted in a portion of the funds sent to these foreign banks consisting of diverted corporate income.

On December 14, 1992, during the audit of the Corporation's 1991 return, Mrs. Zamzam falsely represented to Agent Baker that all of the Corporation's income was recorded in the daily receipts journal and deposited into the Corporate Account. She also failed to disclose that some of the Corporation's income was deposited into the PMM Account. On May 7, 1993, during the audit of the individual returns, the Zamzams falsely represented to Agent Baker that all of the deposits made to the PMM Account that were not reported as taxable income were either derived from certificates of deposit that were cashed when maturing, the proceeds of tax-free bonds, or money that was withdrawn and redeposited.

On July 23, 1993, Dr. Zamzam sent Agent Baker a letter falsely asserting that all of the funds deposited into the PMM Account had already been taxed. Dr. Zamzam again failed to disclose that a large portion of the deposits into the PMM Account consisted of diverted corporate income.

At some point, the IRS instituted a criminal investigation of the Zamzams, headed by IRS Special Agent David Gannaway (Special Agent Gannaway). During an interview by Special Agent Gannaway of Dr. Zamzam on June 29, 1994, Dr. Zamzam admitted that he made some of the entries in the daily receipts journal and some of the corporate deposits himself. Dr. Zamzam also falsely represented that all corporate income was recorded in the daily receipts journal and directly deposited into the Corporate Account. Dr. Zamzam also falsely denied that some of the corporate income was deposited into the PMM Account.

Special Agent Gannaway then interviewed the Zamzams on May 3, 1995. The day following this interview, Dr. Zamzam spoke with one of his stock brokers, Peter Cholerton (Cholerton), to determine the value of an investment account held solely in Mrs. Zamzam's name. Shortly thereafter, Dr. Zamzam directed Cholerton to wire $364,000 from the account to a foreign account the couple had at the Swiss Bank Corporation. The Zamzams held a second investment account in Mrs. Zamzam's name that was managed by another stock

4

broker, Edward Gerace (Gerace). During the same time period that Dr. Zamzam was directing Cholerton to wire the $364,000 to the couple's account at the Swiss Bank Corporation, Dr. Zamzam directed Gerace to wire $474,000 to the same account at the Swiss Bank Corporation.

On October 10, 1996, a federal grand jury sitting in the Western District of Virginia indicted the Zamzams on various criminal tax counts. Counts one through five charged the Zamzams with willfully evading and defeating a large part of their individual federal income taxes for the years 1990, 1991, 1992, 1993, and 1994 by filing false individual income tax returns that omitted substantial amounts of taxable income in violation of 26 U.S.C. § 7201. Counts six through ten charged Mrs. Zamzam alone with willfully aiding and assisting the preparation and presentation of materially false and fraudulent federal income tax returns for the Corporation for the years 1990, 1991, 1992, 1993, and 1994 in violation of 26 U.S.C. § 7206(2). Finally, Counts eleven through thirteen charged Dr. Zamzam alone with willfully making and subscribing under the penalties of perjury materially false federal income tax returns for the Corporation for the years 1991, 1992, and 1994 in violation of 26 U.S.C. § 7206(1).

A jury trial was subsequently held on all counts. The government's theory at trial was that the Zamzams had diverted $668,569 of corporate income into the PMM account by failing to record varying amounts of corporate income in the Corporation's daily receipts journal and then depositing those amounts into the PMM account rather than the Corporate Account without reporting the diverted amounts as income on either the Corporation's federal income tax returns or the couple's individual federal income tax returns. By this method of diversion, the Corporation's daily receipts journal coincided with the amounts deposited into the Corporate Account, thus making the discovery of the diversion scheme more difficult. The government also theorized at trial that the Zamzams had diverted $32,113 in corporate rental income from Tri-City Opticians and Dr. Charles Owens to their PMM account by depositing the rental income received directly into the PMM account, failing to record the payments in the Corporation's daily receipts journal, and failing to report the diverted amounts as income on either the Corporation's federal income tax returns or their individual federal income tax returns.

5

The Zamzams' theory at trial was that Fuller had instructed Mrs. Zamzam to withhold amounts from the Corporate Account for deposit into the PMM account in order to avoid the burden of double taxation, and she innocently followed his instructions without Dr. Zamzam ever knowing how their individual or the Corporation's federal income taxes were computed. Notably, however, during the government's cross examination of Mrs. Zamzam, she admitted that she did not keep her diversionary activities a secret from anyone, including Dr. Zamzam.

The jury convicted the Zamzams on all counts. The district court sentenced Dr. Zamzam to a twenty-four month term of imprisonment followed by two years of supervised release and Mrs. Zamzam to a thirty month term of imprisonment followed by two years of supervised release. The district court also ordered each to pay a $10,000 fine and $2,940.27 to reimburse the government for the costs of its prosecutions. Dr. Zamzam noted a timely appeal. **1**

II.

As previously stated, Dr. Zamzam challenges the sufficiency of the evidence to support the willfulness element of each count on which he was convicted. In support, Dr. Zamzam argues that he could not possibly have acted willfully with respect to the conduct for which he was convicted, because his wife was solely responsible for all of the couple's and the Corporation's financial matters.

We must sustain Dr. Zamzam's convictions if there is substantial evidence to support the willfulness element of each conviction when the evidence and reasonable inferences to be drawn therefrom are viewed in the light most favorable to the government. See Burgos, 94 F.3d at 862. "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. When reviewing the sufficiency of the evidence, we must remember that it is "[t]he jury, not the review-

_____

**1** Mrs. Zamzam also noted a timely appeal. Her appeal was later voluntarily dismissed, however, pursuant to Federal Rule of Appellate Procedure 42(b).

ing court, [that] weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994) (citations omitted).

In order to establish a violation of 26 U.S.C. § 7201, the government must prove and the finder of fact must find that the defendant (1) willfully (2) committed an affirmative act constituting an attempted evasion of tax payments, and (3) a substantial tax deficiency existed. See United States v. Wilson, 118 F.3d 228, 236 (4th Cir. 1997). In order to establish a violation of 26 U.S.C. § 7206(1), the government must prove and the finder of fact must find that the defendant (1) willfully (2) made and subscribed to a tax return containing a written declaration, (3) under penalties of perjury, and (4) did not believe the return to be true and correct as to every material matter. See United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996).

The willfulness element in both of these criminal tax offenses is defined as the "`voluntary, intentional violation of a known legal duty.'" Cheek v. United States, 498 U.S. 192, 201 (1991). A jury may infer willfulness with respect to the criminal tax offenses of which Dr. Zamzam was convicted from any conduct having the likely effect of misleading or concealing. See Wilson, 118 F.3d at 236. For example, willfulness can be inferred from a defendant's false statement to the IRS for the purpose of concealing income, see id., and the "handling of one's affairs to avoid making the record usual in transactions of the kind," United States v. Callanan, 450 F.2d 145, 148 (4th Cir. 1971) (internal quotation marks omitted). We conclude that the evidence before the jury, when viewed in the light most favorable to the government, is more than sufficient to support the jury's finding of willfulness on the part of Dr. Zamzam on all counts.

A. False Statements to the IRS.

Dr. Zamzam made several false statements to the IRS for the purpose of concealing corporate and personal income. Even if the jury credited Mrs. Zamzam's testimony at trial that she primarily handled the Corporation's and their personal financial affairs, at a minimum,

7

the jury could have reasonably inferred that Dr. Zamzam had knowledge of Mrs. Zamzam's diversionary activities from her testimony that she never kept her diversionary activities a secret from her husband and from Dr. Zamzam's admission to Special Agent Gannaway that he personally made some of the entries in the Corporation's cash receipts journal and some of the deposits into the Corporate Account. Therefore, the jury could have reasonably inferred that when Dr. Zamzam stated to Agent Baker on May 7, 1993, that all of the deposits to the PMM Account that were not reported as taxable income were either derived from certificates of deposit that were cashed upon maturity, the proceeds of tax-free bonds, or money that was withdrawn and then redeposited, he did so with knowledge of the statement's falsity and with intent to conceal the Corporation's and his unreported taxable income. Likewise, the jury could have reasonably inferred that when Dr. Zamzam stated in a letter dated July 23, 1993 to Agent Baker that all of the funds deposited into the PMM Account had already been taxed, he did so with knowledge of the statement's falsity and with intent to conceal the diverted corporate income from the IRS. Finally, the jury could have reasonably inferred that on June 29, 1994, when Dr. Zamzam stated to Special Agent Gannaway that all corporate income was recorded in the daily receipts journal and directly deposited into the Corporate Account, he made the statement with knowledge of its falsity and with intent to conceal the diverted corporate income from the IRS.

B. The Handling Of The Corporation's Affairs To Avoid Making
   The Records Usual In Transactions Of The Kind.

The evidence before the jury firmly established that the diversionary scheme avoided recording the diverted corporate income in the Corporation's daily receipts journal and on the Corporation's bank statements. Thus, the diversionary scheme avoided making the usual records that would have easily revealed the Corporation's receipt of the diverted income. Because the evidence supports the inference that Dr. Zamzam was aware of the diversionary scheme, this is circumstantial evidence of his willfulness on all counts.

C. The Transfers Of Assets To Foreign Banks.

The jury was entitled to infer from Dr. Zamzam's transfer of $1,100,000 from the PC Account containing diverted corporate

8

income to a foreign bank account in 1991 that Dr. Zamzam was attempting to conceal such income from the IRS. Furthermore, the jury was entitled to infer that Dr. Zamzam was attempting to conceal diverted corporate income from the IRS from Dr. Zamzam's actions the day after he met with Special Agent Gannaway on May 3, 1995 and for the next few weeks in directing his stockbrokers to wire more than $800,000 to a Swiss bank account. All of this conduct by Dr. Zamzam is circumstantial evidence of his willfulness on all counts.

In sum, the evidence establishing Dr. Zamzam's false statements to the IRS for the purpose of concealing the diverted corporate income from the IRS, his knowledge that the diversionary scheme avoided making the records usual in transactions of the kind, and his transfers of large amounts of financial assets to foreign banks during the years relevant to the counts of conviction is more than sufficient to support the jury's finding of willfulness on all counts for which Dr. Zamzam was convicted. Accordingly, we affirm all of Dr. Zamzam's convictions.[2]

AFFIRMED

_____

[2] Dr. Zamzam makes two other arguments in support of his challenge to all of his convictions. First, he contends that the documentary evidence gathered by Agent Baker should have been suppressed as gathered in violation of his due process rights under the Fifth Amendment, because Agent Baker did not obtain an IRS Form 2848 from Fuller, which is a power of attorney, as mandated by the Internal Revenue Manual. We hold Dr. Zamzam waived his right to challenge the admission of this evidence on appeal by failing to move for its suppression below without just cause to excuse his failure. See Fed. R. Crim. P. 12(b)(3); 12(f); United States v. Ricco, 52 F.3d 58, 62 (4th Cir. 1995) (relying on Federal Rule of Criminal Procedure 12(b)(3) and 12(f) to hold (1) defendant waives right to assert claim that evidence was obtained in violation of his rights under the Fourth and Fifth Amendments by failing to file a motion to suppress the evidence before trial without just cause to excuse such failure, and (2) defendant's objection at trial could not suffice to preserve his constitutional objections). Second, he argues that the district court abused its discretion by admitting the evidence establishing the transfers in 1990 and 1991 to foreign bank accounts. We hold this argument is without merit.